## PELHAM *v.* ROSE.

1. The seizure of the property of which a forfeiture is sought by proceedings had under the act of Congress of July 17th, 1862, "to suppress insurrection, to punish treason and rebellion, to seize and confiscate the property of rebels, and for other purposes," is the foundation of the subsequent proceedings. It is essential to give jurisdiction to the court to decree a forfeiture.

2. By the seizure of a thing is meant the taking of the thing into possession, the manner of which, and whether actual or constructive, depending upon the nature of the thing seized. As applied to subjects capable of manual delivery the term means caption; the physical taking into custody.

3. Where a writ of monition issued upon a libel of information, filed by the United States against a promissory note, commanded the marshal "*to attach the note, and to detain the same in his custody until the further order of the court respecting the same;*" and the marshal returned the writ with his indorsement thereon that he had "*arrested the property within mentioned;*" *Held*, in an action against the marshal for a false return, 1st, that due and legal service of the writ required the marshal to take the note into his actual custody and control; and 2d, that the return of the marshal signified that he had actually taken the note into his custody and under his control.

4. The court will decline to answer a question certified to it by the Circuit Court when it rests upon an hypothesis. -

ON certificate of division of opinion between the judges of the Circuit Court for the District of Indiana, the case being thus:

An act of Congress, approved July 17th, 1862, entitled "An act to *seize* and confiscate the property of rebels," thus enacts:

"Sec. 6. All the estate and property, moneys, stocks, and credits, of such person, shall be liable to seizure as aforesaid; and it shall be the duty of the President to *seize* and use them as aforesaid, or the proceeds thereof."

"Sec. 7. That to secure the condemnation and sale of any such property, *after the same shall have been seized,* so that it may be made more available for the purposes aforesaid, proceedings *in rem* shall be instituted in the name of the United States, in any District Court thereof, or in any Territorial court, or in the

United States District Court for the District of Columbia, *within which the property above described, or any part thereof, may be found, or into which the same may be brought,* which proceedings shall conform, as nearly as may be, to proceedings in 'admiralty and revenue cases;' and if said property shall be found to have belonged to a person in rebellion, the same shall be condemned as enemies' property."

Under this statute the attorney of the United States for the district of Indiana filed his libel of information against certain "credits and effects" of one Henry Pelham (the plaintiff), "that is to say, one promissory note for the sum of $7000, dated March 1st, 1862, and due four years after date, executed by Lewis Pelham to him the said Henry."

A writ of monition was issued, directed to a certain Rose, the then marshal of the district, which, after referring to the libel, ordered him to attach the note and detain the same *in his custody,* and to cite all persons claiming the same, or having anything to say why it should not be condemned and sold, to appear on a day designated and interpose their claims.

Rose made this return:

"In obedience to the within warrant, I have *arrested the property* within mentioned, and have cited all persons having or pretending to have any right, title, or interest therein, as by the said warrant I am commanded to do."

The District Court subsequently proceeded to try and determine the matters involved in the libel, and decreed,

1st. That for failing to appear, the default of all persons interested in the note should be entered.

2d. That the charges of the libel should be taken as confessed.

3d. That the note should be condemned as forfeited to the United States; and,

4th. That the clerk should issue a writ of *venditioni exponas* to the marshal to sell the note at public auction.

This latter writ was accordingly issued and delivered to the marshal, and was returned by him with a certificate that

he had sold the note at auction to Lewis Pelham, who was its maker, for $3000.

Henry Pelham now brought the action below against Rose and his sureties for a false return to the writ of monition.

The declaration, after stating such of the facts above-mentioned as were pertinent, set forth that the marshal did not, in obedience to the writ of monition, attach the note therein described, nor seize the same by himself or deputy; that the note was not even within sight of the marshal or of any of his deputies at any time between the delivery of the writ to him for execution and its return; nor was it, pending the proceedings by libel, within the State of Indiana; but that during this time, and for a period long after the entry of the decree of confiscation, was in the custody and posses-sion of the plaintiff in the State of Kentucky. Wherefore (the declaration asserted) the return of the marshal was wholly false, and the decree of condemnation was founded upon a false return, and hence an action had accrued to the plaintiff on the bond of the marshal.

The defendants demurred, and upon the argument of the demurrer the following questions arose, upon which the judges of the court were opposed in opinion:

" 1st. Whether, upon the facts stated in the declaration, it was material and necessary to the due and legal service of *the writ of monition*, therein set forth by the marshal, that he should have seized and taken into his custody and under his control, the promissory note mentioned.

" 2d. Whether the return to the writ of monition, as set forth in the declaration, must be construed to mean that the marshal had actually taken into his custody and under his exclusive control, the promissory note; and,

" 3d. Whether, on the hypothesis that all the matters, as set forth in the declaration, were true, the judgment and pro-ceedings in the District Court, as therein stated, would estop the plaintiff to maintain an action on the promissory note against the maker."

*Mr. Coburn, for the plaintiff in error, a brief of Messrs. Morrison, Dye & Harris being filed; Mr. Miles, contra.*

Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court as follows:

The act of July 17th, 1862,* contemplates the seizure of the property, the forfeiture of which is sought by the proceedings taken under its provisions. It says so in express terms. In one section it makes it the duty of the President " to cause the seizure" of the estate and property, money, stocks, and credits of the persons designated therein. In another section it declares that the like property of persons engaged in armed rebellion against the United States, or in aiding or abetting the rebellion, " shall be liable to seizure," and imposes a similar duty upon the President to seize and use it. And in a third section it provides, that to secure the condemnation and sale of the property, " *after the same shall have been seized*," proceedings shall be instituted, in the name of the United States, in any District Court thereof, or in any Territorial court, or in the District Court for the District of Columbia, within which the property, or any part thereof, may be found, or, if movable, may first be brought; and that such proceedings shall conform, as nearly as possible, to proceedings in admiralty or revenue cases.

The seizure of the property, as thus seen, is made the foundation of the subsequent proceedings. It is essential to give jurisdiction to the court to decree a forfeiture. Now, by the seizure of a thing is meant the taking of a thing into possession, the manner of which, and whether actual or constructive, depending upon the nature of the thing seized. As applied to subjects capable of manual delivery, the term means caption; the physical taking into custody.

In the case at bar, a visible thing, capable of physical possession, is the subject of the libel. It is the promissory note of Pelham which constitutes the *res*, against which the proceeding is instituted, and not " a credit," or debt, which the note is supposed by the defendants' counsel to represent. Whether by any proceedings under the act of July, 1862, the indebtedness of a maker on a negotiable promissory

---

* 12 Stat. at Large, 590, §§ 5, 6, and 7

note, before its maturity, could be reached without the possession of the note itself, is not a question presented for our consideration. It is sufficient that the object of the present libel is to reach the note itself. This appears at every stage of the proceedings; in the information; in the monition to the marshal; in his return; in the decree of the court; and in the sale made.

To effect its seizure, as required by the act, it was, therefore, necessary for the marshal to take the note into his actual custody and control. And such was the purport of the command of the writ of monition. The writ describes the note, and the command to the marshal is, "to attach the note, and to detain the same in your custody until the further order of the court respecting the same,"—language which is inconsistent with any service other than that made by physically taking the note into his possession and control. This form of command is usually adopted in warrants to the marshal in cases of municipal seizure. "On receiving it" (the warrant), says Conkling in his treatise, "it is the duty of the marshal to arrest the property seized by taking it into his custody."* The term arrest is the technical term used in admiralty process to indicate an actual seizure of property. And the return of the marshal to the writ, that he has "arrested the property within mentioned," signifies in apt and technical language that he has actually taken the property into his custody and under his control.

The first and second questions certified to us must, therefore, be answered IN THE AFFIRMATIVE.

The third question rests upon an hypothesis, and we must DECLINE TO ANSWER it until it has lost its hypothetical character and become involved in actual controversy.

---

* Fourth edition, p. 524.