## YOKOHAMA SPECIE BANK, LIMITED, v. CHENGTING T. WANG.

No. 9379.

Circuit Court of Appeals, Ninth Circuit.

July 12, 1940.

Carroll Single, Stanley J. Cook, and Clarke Weigand, all of San Francisco, Cal., for appellant.

Hugh K. McKevitt, Frederick W. Dorr, Archie M. Stevenson, and Dorr & Stevenson, all of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellant sought by a libel in rem to recover possession of a cargo of scrap iron aboard the steamship Kuang Yuan. Because of its national character and the claim of immunity asserted by the Republic of China, the court denied a decree controlling the movements of the steamship or the use of its equipment for the purpose of facilitating the discharge of the cargo. Libellant appeals.

The situation disclosed by the record is illustrative of the present troubled state of the world.

The American owners of the steamship Edna Christensen sold it to the Yung Yuan Steamship Company, a corporation organized under the laws of the Republic of China. The name of the vessel was changed to Kuang Yuan, and the Chinese consul-general at San Francisco issued for it a provisional Chinese registry. The American registry was thereafter formally canceled.

Prior to the sale of the ship, the Yung Yuan Steamship Company entered into a charter party with a Japanese concern for the transportation of a cargo of melting scrap to Japan. The scrap was placed on board the Kuang Yuan and bills of lading covering the shipment were signed by the master. The Chinese consul-general, however, refused to deliver the registry of the vessel to the master, and in consequence the ship was unable to commence its voyage, and it remained at anchor in San Francisco Bay.

In this posture of affairs, on April 22, 1938, appellant, the holder of the bills of lading, filed the possessory action against the cargo. A monition was issued directing the United States Marshal to seize the melting scrap on board the steamship. Next day, April 23, a deputy marshal, accompanied by a Chinese who purported to be an interpreter and who was in the employ of libellant, boarded the ship, handed a copy of the monition to the highest officer present—the second mate—and attached a copy to the bulkhead in the saloon of the vessel. The interpreter purportedly read the monition to the crew, and thereupon he and the deputy marshal took their departure. The monition was not attached to the cargo and no keeper was placed upon the vessel or in charge of the cargo.

On April 26, 1938 the Republic of China expropriated the ship. Next day, pursuant to the order of expropriation and to instructions from his government, the Chinese consul-general at San Francisco took possession and control of the vessel. The Chinese Ambassador (appellee) then intervened, setting up the expropriation by his government and asserting that the court had, therefore, no jurisdiction over the ship.

The relief sought in the libel was that process be issued against the scrap and that all persons claiming any interest therein be cited to appear; that libellant be given possession of the cargo upon surrender of the bills of lading; and that the court make an appropriate order, as to the movement of the ship, to facilitate the discharge of the cargo at the dock or into lighters or other vessels.

The decree must be affirmed. The fact that appellant may be entitled to the possession of the cargo is not conclusive of its right to have the relief asked. The existence of a valid claim is not inconsistent with inability to enforce it. The Siren, 7 Wall. 152, 19 L.Ed. 129; The Luigi, D.C., 230 F. 493. It is settled that a national vessel of a sovereign is not subject to the jurisdiction of the courts of the United States, and under proper circumstances is entitled to claim immunity. Berizzi Bros. v. Steamship Pesaro, 271 U.S. 562, 46 S.Ct. 611, 70 L.Ed. 1088. Appellant concedes this, but contends that since the expropriation took place after the libel was filed and the monition served, the court acquired jurisdiction which could not be divested by the expropriation.

A sufficient answer to the argument is that the Kuang Yuan was not a party to the cause, and there was no arrest of the ship or any attempt to arrest it. The vessel itself was not brought within the custody of the court. And as to the

cargo, we agree with the finding below that there had been no effective seizure of it. The deputy marshal did not so much as see the scrap. It was not placed in the custody or control of any one representing the marshal, not even of the mate or a member of the crew, but remained in the control of the ship. To obtain jurisdiction to proceed to a decree in rem in admiralty, it is essential that the res come into the possession of the court by seizure under adequate warrant of arrest. Criscuolo v. Atlas Imperial Diesel Engine Co., 9 Cir., 84 F.2d 273.

Admiralty Rule 10, 28 U.S.C.A. following section 723, provides: "In all cases of seizure, and in other suits and proceedings in rem, the process, if issued and unless otherwise provided for by statute, shall be by a warrant of arrest of the ship, goods, or other thing to be arrested; and the marshal shall thereupon arrest and take the ship, goods, or other thing into his possession for safe custody * * *."

■ According to the weight of authority, the term arrest, as used in admiralty, imports an actual seizure of the property. Taylor v. Carryl, 20 How. 583, 15 L.Ed. 1028; The Rio Grande, 23 Wall. 458, 23 L. Ed. 158; Bruce v. Murray, 9 Cir., 123 F. 366; Brennan v. Steam Tug Anna P. Dorr, D.C.Pa., 1880, 4 F. 459; The Merrimac, D.C.Fla., 1917, 242 F. 572.

A good discussion of the subject is contained in Pelham v. Rose, 1870, 9 Wall. 103, 106, 19 L.Ed. 602. Although the case involved a purported seizure of a promissory note under an act relating to the confiscation of property of persons engaged in rebellion against the United States, the act provided that the proceedings thereunder should conform as nearly as possible to proceedings in admiralty or revenue cases. In holding that there had been no valid seizure of the note, Mr. Justice Field, speaking for the court, said that "the seizure of the property * * * is made the foundation of the subsequent proceedings. It is essential to give jurisdiction to the court to decree a forfeiture. Now, by the seizure of a thing is meant the taking of a

thing into possession, the manner of which, and whether actual or constructive, depending upon the nature of the thing seized. As applied to subjects [objects] capable of manual delivery, the term means caption; the physical taking into custody. * * * To effect its seizure, as required by the Act it was, therefore, necessary for the Marshal to take the note into his actual custody and control. And such was the purport of the command of the writ of monition. * * * The term arrest is the technical term used in admiralty process to indicate an actual seizure of property."

Appellant contends that an actual seizure of the cargo was not necessary to confer jurisdiction, and suggests also that the service upon the mate was, in effect, a sort of garnishment, sufficient to subject the ship and cargo to the jurisdiction of the court. For these propositions appellant cites the cases shown on the margin.[1] However, in the main these cases are distinguishable as involving situations in which the goods, at the time of seizure, were already in the custody of a public official, such as a customs collector, or cases in which the marshal originally had made a valid seizure but subsequently lost possession. The two first cited, the Snow and Flaherty cases, tend to support appellant's argument, although they involved proceeds of the res. And see United States v. Freights, etc., 274 U.S. 466, 47 S.Ct. 666, 71 L.Ed. 1156, not cited by either party here.

It is argued that immunity from judicial process is not granted as a right, but as a privilege based upon international comity; and that the extension of the privilege in this instance would virtually confirm the seizure of libellant's property by a belligerent national within the territorial limits of a neutral country.

The immunity from process of the vessel of a sovereign is bottomed upon lack of jurisdiction in the courts as well as upon considerations of comity. Berrizi Bros. v. Steamship Pesaro, supra. Concerning the morals of the situation, it should be pointed out that the Republic of China was not

---

[1] Snow v. 180-¾ Tons of Scrap Iron, D.C.,R.I.,1882, 11 F. 517; Flaherty v. Doane, D.C.,Mass.,1867, Fed.Cas. No. 4849; 250 Tons of Salt, D.C.,N.Y.,1880, 5 F. 216; The E. W. Gorgas, D.C.,N.Y., 1879, Fed.Cas. No. 4585; United States v. The Little Charles, Cir.Ct.,Va.,1818, Fed.Cas. No. 15,612; The Circassian, D. C.,N.Y.,1866, Fed.Cas. No. 2721; The Joseph Gorham, D.C.,Conn.,1843, Fed. Cas. No. 7537; Jorgensen v. 3173 Casks of Cement, D.C.,N.Y.,1889, 40 F. 606; The C. W. Cowles, D.C., Iowa, 1903, 124 F. 458; Hagan v. Lucas, 10 Pet. 400, 9 L.Ed. 470; The Whippoorwill, D. C.,Md.,1931, 52 F.2d 985.

formally a belligerent. The expropriation was accomplished peaceably and involved no breach of American neutrality; and it is plain that the charterers took the risk of expropriation when they engaged the services of the ship. The problem of international relations here involved is one that had best be left to be dealt with by the political arm of the government.

In the circumstances presented, the court was right in refusing a decree directing the movements of the vessel or the use of its gear.

Affirmed.