UNITED STATES of America, Plaintiff,

v.

ALL FUNDS ON DEPOSIT IN ANY ACCOUNTS MAINTAINED IN the NAMES OF Heriberto Castro MEZA OR Esperanza Rodriguez De CASTRO and all Funds Traceable Thereto at the National Bank of Greece, in London, England, Including but not Limited to Account No. TSY2DO48423, at Bank of Credit and Commerce International (BCCI), in London, England Including but not Limited to Accounts Nos. 03062866 and 01160156 and Dresdner Bank in London, England, Including but not Limited to Account No. 257692, Defendants.

No. CV 93–3168(JBW).

United States District Court,
E.D. New York.

July 8, 1994.

Zachary W. Carter, U.S. Atty., Brooklyn, NY, by Jennifer C. Boal, Gary R. Brown, and Arthur P. Hui, for the U.S.

Richard Ware Levitt, New York City and Robert I. Targ, South Miami, FL, for claimant Esperanza Rodriguez De Castro.

## MEMORANDUM

WEINSTEIN, District Judge:

Claimant Esperanza Rodriguez De Castro ("Castro"), individually and on behalf of the estate of Heriberto Castro Meza, moves to dismiss this civil forfeiture action against bank accounts in London, England, contending that this court lacks in rem jurisdiction. Because this court has the requisite control over the bank accounts, the motion is denied.

### Facts

The complaint in this case alleges that Jose Santacruz Londono ("Santacruz") and individuals working with him operate extensive international drug trafficking and money laundering enterprises, involving millions of dollars and multi-kilogram shipments of cocaine smuggled into the United States and distributed in the Eastern District of New York and elsewhere. It also alleges that in order to facilitate these activities the Santacruz organization engages in large-scale financial transactions involving the transfer of substantial sums of money to accounts in the United Kingdom, including the defendant accounts.

The defendant accounts were opened in the names of Heriberto Castro Mesa and Esperanza Rodriguez De Castro, the father-in-law and mother-in-law of Santacruz. The complaint alleges that the accounts were controlled by a member of the Santacruz organization, Franklin Jurado. Jurado was arrested in Luxembourg in June, 1990 for laundering of drug money. In connection with his arrest and the arrest of other money launderers in the Santacruz organization, tens of millions of dollars of alleged drug and money laundering proceeds were frozen in bank accounts worldwide, including $12 million that was forfeited in *United States v. All Funds*, 801 F.Supp. 984 (E.D.N.Y.1992), *aff'd sub nom., United States v. Daccarett*, 6 F.3d 37 (2d Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1294, 127 L.Ed.2d 648 (1994).

On July 12, 1990, the United States Department of Justice sent a request to the Central Authority of the United Kingdom pursuant to the Agreement between the United States and the United Kingdom Concerning the Investigation of Drug Trafficking Offenses and the Seizure and Forfeiture of Proceeds and Instrumentalities of Drug Trafficking, signed at London, February 9, 1988 and the Drug Trafficking and Offenses Act of 1986. It requested the Central Authority to seek a restraint of the defendant bank ac-

counts based on the Justice Department's investigation of the Santacruz organization. The request indicated that a criminal prosecution in the United States of Santacruz was imminent, and that the defendant accounts would be subject to a corresponding criminal forfeiture. Cooperating, the Crown Prosecution Service obtained an order from the High Court of England and Wales restraining the defendant accounts.

In October 1990, a criminal complaint was filed in the Eastern District of New York against Santacruz charging him with conspiracy to distribute cocaine and conspiracy to launder narcotics proceeds. He has been a fugitive since that time. The government believes he now is in Cali, Columbia. In 1991, extradition arrangements between Columbia and the United States were terminated. It is thus unlikely that Santacruz will ever be tried in the United States.

On July 16, 1993 the instant civil forfeiture action was instituted against the defendant bank accounts in England. On the same date, Chief Magistrate Judge Chrein executed an order directing the Clerk of the Court to issue a warrant of arrest in rem pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims. On July 19, 1993, the Clerk issued a warrant commanding the United States Marshal to attach the defendant accounts. On September 8 and 16, 1993, Martin Comley, a Detective Constable in the United Kingdom, at the request of the United States Marshal served copies of the Warrant and Verified Complaint on the banks holding the defendant accounts in England.

On November 1, 1993, claimant Castro filed a motion to dismiss this action claiming that the Court lacks in rem jurisdiction over the defendant accounts. On March 2, 1994, this court was informed that the claimant Castro had petitioned the High Court of England, asking that its July 30, 1990 order restraining the defendant accounts be discharged on the ground that the order assumed that the forfeiture proceeding in the United States would be an in personam proceeding accompanying a criminal prosecution, not a civil, in rem forfeiture. This court

stayed proceedings pending a decision by the court in England.

On March 18, 1994, the High Court of England issued a judgment, holding that "although now based on the civil proceedings in New York, the order will remain in force." *J.L. and In the Matter of the Drug Trafficking Offenses Act 1986 (Designated Countries and Territories) Order 1990,* at 10 (High Court of Justice March 18, 1994).

*Law*

### A. Subject Matter Jurisdiction and Venue

In forfeiture cases, venue has traditionally only been proper in the judicial district in which the property to be forfeited is found. *See, e.g.,* 28 U.S.C. § 1395(b) ("A civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found.") *See also United States v. Contents of Account No. 2033301,* 831 F.Supp. 337, 338–39 (S.D.N.Y.1993). In order for a court to have venue over property outside the United States, the property had to be physically brought into the district. *See, e.g.,* 28 U.S.C. 1395(c) ("A civil proceeding for the forfeiture of property seized outside any judicial district may be prosecuted in any judicial district into which the property is brought.") *See also United States v. One Caribou Aircraft Registration No. N–1017–H,* 557 F.Supp. 379, 381 (D.P.R.1983).

Congress, in the last several years, has expanded the forfeiture laws. 21 U.S.C. § 881(j) and 18 U.S.C. § 981(h) both state that venue for a civil forfeiture proceeding is proper in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought. *See United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974, 979 (3d Cir.1992), *cert. denied,* — U.S. ——, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993); *United States v. 51 Pieces of Real Property Roswell, N.M.,* 17 F.3d 1306, 1311 (10th Cir.1994). In addition, in October, 1992, Congress amended 28 U.S.C. § 1355(b) to give subject matter jurisdiction and venue to district courts over forfeiture cases in which *any* of the acts or omissions giving rise to the forfeiture oc-

curred in the district, even if the property is located in a foreign country. Section 1355 now reads:

>  (b)(1) A forfeiture action or proceeding may be brought in—
>
>  (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or
>
>  (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
>
>  (2) Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District Court for the District of Columbia.

## B. *In Rem Jurisdiction*

The issue of in rem jurisdiction over the defendant property is separate from subject matter jurisdiction and venue. *See United States v. Contents of Accounts Nos. 3034504504 and 144–07143*, 971 F.2d at 980. After 21 U.S.C. § 881(j) and 18 U.S.C. § 981(h) were enacted expanding venue, the Third Circuit found that although the new statutes conferred venue on district courts for forfeitures outside the judicial district, the courts did not have in rem jurisdiction over the property because they had no means by which to order an arrest of the property. *Id.* at 983. *See also United States v. 51 Pieces of Real Property Roswell, N.M.*, 17 F.3d at 1311 (following the Third Circuit case). Service of process was only available under Fed.R.Civ.P. 4(f), which allows for service anywhere within the territorial limits of the state in which the district court is located, and Fed.R.Civ.P. 4(e), which allows for service under any statute of the state within which the district court sits. *Id.* at 981.

In response, when Congress amended § 1355, it included a provision for nationwide service of process, § 1355(d), which states:

>  Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

The purpose of this provision was to clarify that Congress intended to confer in rem jurisdiction to district courts which had venue pursuant to § 1355(b). *See United States v. Contents of Account No. 2033301*, 831 F.Supp. at 339 (citing 137 Cong.Rec. S16640, *S16642 (Nov. 13, 1991) (statement of Sen. D'Amato)). Courts have found that this provision indeed confers in rem jurisdiction in such cases. *See, e.g., United States v. $633,-021.67*, 842 F.Supp. 528, 530–32 (N.D.Ga. 1993); *United States v. Contents of Account No. 2033301*, 831 F.Supp. at 339; *United States v. One 1990 Lincoln Town Car*, 817 F.Supp. 1575, 1577–78 (N.D.Ga.1993).

A search of the cases finds no published opinion on the forfeiture of property located outside the United States. The government has, however, brought to the court's attention an unpublished case in the Middle District of Florida, *United States v. Certain Funds in Hong Kong, et al.*, No. CV 91–598 (M.D.Fla. 1993), in which the court ordered a final judgment of forfeiture against property located in Hong Kong after the government proved that the funds had been seized by competent authority of the sovereign of the site of the funds.

■ The Supreme Court has stated in two recent forfeiture cases that a court must have actual or constructive control of the res when an in rem forfeiture action is initiated. *United States v. James Daniel Good Real Property*, —— U.S. ——, ——, 114 S.Ct. 492, 503, 126 L.Ed.2d 490 (1993); *Republic Nat. Bank of Miami v. United States*, —— U.S. ——, ——, 113 S.Ct. 554, 559, 121 L.Ed.2d 474 (1992). For this proposition, both cases cite to *The Brig Ann*, 13 U.S. (9 Cranch) 289, 3 L.Ed. 734 (1815). This case states that property "is actually within [a court's] possession when it is submitted to the process of the Court; it is constructively so, when, by a seizure, it is held to ascertain and enforce a right or forfeiture which can alone be decided by a judicial decree in rem." *Id.* at 291.

The Court in *Republic Nat. Bank of Miami* stated that, "it long has been understood

that a valid seizure of the res is a prerequisite to the *initiation* of an *in rem* civil forfeiture proceeding." *Republic Nat. Bank of Miami,* —— U.S. at ——, 113 S.Ct. at 557 (emphasis in the original). The Court explained, the " 'seizure of the RES, and publication of the monition or invitation to appear is regarded as equivalent to the particular service of process in law and equity.' " *Id.* at ——, 113 S.Ct. at 557–58 (quoting *Taylor v. Caryl,* 61 U.S. (20 How.) 583, 559, 15 L.Ed. 1028 (1858)).

Extra-territorial jurisdiction over property is consistent with Western law. *See Derby & Co. v. Weldon,* Ch. 48, 57, per Parker L.J. (Court of Appeal of England 1990) (enjoining assets outside of England); *Republic of Haiti v. Duvalier,* 2 WLR 261 (Court of Appeal of England 1989) (same). *See also* Phillip H. Pettit, *The Onward March of Mareva and Anton Pillar Injunctions,* in *Equity and Contemporary Legal Developments* (Stephen Goldstein, ed. 1990) (First International Conference on Equity, The Hebrew University of Jerusalem, June 1990); Helene Pines Richman, *The London Letter: 'Mareva' Injunction: Important Tactical Tool,* N.Y.L.J., July 7, 1994 at 2.

■ In rem jurisdiction over property in a foreign country exists if there is a seizure of the property that gives the court constructive control over the property, and if the seizure satisfies the traditional concerns of jurisdiction, namely enforceability of the judgment and reasonable probability of notice to the parties interested in the property. *Cf. Republic Nat. Bank of Miami,* —— U.S. at ——, 113 S.Ct. at 559.

### Application of Law to Fact

It is undisputed that this court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1355(b)(2) and that venue is proper. Relevant acts involving drugs by the Santacruz organization giving rise to the forfeiture allegedly took place in the Eastern District of New York.

■ The open question is whether this court has jurisdiction over the property. At the time this forfeiture action was initiated, the defendant property was seized by order of the High Court of England for the sole purpose of restraining the property pending a forfeiture proceeding in the United States. This order was clarified by the revised judgment issued by the High Court explicitly stating that the accounts in England were being restrained pending the outcome of this civil forfeiture action.

There is little doubt that Great Britain is cooperating with federal prosecutors. Thus, it may be deemed, for this purpose, to be acting as an agent of the United States, giving the later and this court constructive possession. Seizure of the accounts in Great Britain with the assistance of the British government gave this court constructive control over the defendant funds. The opinion of the English High Court gives assurance that a judgment of forfeiture issued by this court would be enforced in England.

Notice of this action was served on the property by English officials at the behest of the United States Department of Justice. Claimants do not assert that notice was unreasonable or otherwise deficient.

### Conclusion

This court has jurisdiction over the defendant bank accounts. Claimant's motion to dismiss is denied.

SO ORDERED.