UNITED STATES of America, Plaintiff,

v.

3 PARCELS IN LA PLATA COUNTY, COLORADO, et al., Defendants.

No. CV–N–89–396–ECR.

United States District Court,
D. Nevada.

Nov. 17, 1995.

**1451**

Greg Addington, Assistant U.S. Attorney, Reno, NV, for Plaintiff.

Glynn Cartledge, Reno, NV, for claimants Marcus Zybach, Zinaida Zybach and Reza Alexis Zybach.

Mark E. Haines, Carson City, NV, and Earl D. Johnson, Barbara N. Horn, Oakland, CA, for claimant Clive J. Lawrence.

Lawrence J. Semenza, Reno, NV, for claimant Francillia Emmanuel.

## ORDER

EDWARD C. REED, Jr., District Judge.

### I. Introduction

This is a civil *in rem* forfeiture action brought by the United States pursuant to 21 U.S.C. § 881 against certain property, both real and personal, owned by Marcus Zybach, Francillia Emmanuel, and Clive Lawrence. The case is before the court on remand from the U.S. Court of Appeals for the Ninth Circuit. *United States v. 3 Parcels in La Plata County, Colorado*, 53 F.3d 341, 1995 WL 261138 (9th Cir.1995) (reversing grant of summary judgment in favor of the United States).

Marcus Zybach operated a marijuana-smuggling ring during the 1970's and 1980's. In 1991 he pled guilty to federal narcotics charges and, following extensive negotiations with the United States, entered into a stipulation and order forfeiting various assets.[1] The civil forfeiture proceedings, which had been stayed pending disposition of the criminal case, recommenced in 1993.

Presently at issue is the government's claim to the proceeds from the sale of certain real property located in Tiburon, California by Zybach to one Kenneth Tishgart in December 1987. Under the contract of sale,

---

1. The terms of the plea agreement in the companion criminal case included a stipulation (Doc. # 74) forfeiting certain of Marcus Zybach's assets. Forfeited under the terms of the stipulation were several acres of land in Siskiyou County, California, three other parcels of land in La Plata County, Colorado, various personal property and vehicles, a house in Durango, Colorado, as well as cash, a California bank account, and 114 Krugerrands. The stipulation expressly exempts from forfeiture any and all assets "held" by Zybach "outside the United States." No express mention of the Tiburon note appears in the stipulation.

Tishgart paid Zybach approximately $500,000 in cash and signed a promissory note for an additional $320,000. The promissory note was secured by a deed of trust duly recorded in the local office of records.

Zybach has moved for summary judgment on the government's claim to the $320,000 balance still owing on the sale of the Tiburon property. Zybach's Motion for Summary Judgment, Doc. # 164. The motion does not appear to challenge the government's claim to any other property named in the complaint.[2]

Also at issue is the degree to which Clive Joseph Lawrence, who is Francillia Emmanuel's brother, knew that the property transferred to him by Emmanuel was acquired with the proceeds of Zybach's illegal drug business. Lawrence has moved for summary judgment against the government on the ground that he has adduced evidence of his status as an "innocent owner" sufficient to entitle him to judgment as a matter of law. Lawrence's Motion To Amend Claim etc., Doc. # 165.

## II. Disposition of the Jurisdictional Issue on Summary Judgment

■ Claimant Zybach has contested the existence of jurisdiction over the defendant *res* via motion for summary judgment. Generally, such contests are more properly resolved by motion to dismiss. *Beacon Enterprises v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983). The distinction is more than a procedural nicety; the two forms of relief are entirely different in nature and effect.

■ Lack of jurisdiction over the defendant is a matter in abatement and does not go to the merits of the claim. *Studio Elec. Technicians Local 728 v. International Photographers of the Motion Picture Ind. Local 659,* 598 F.2d 551 (9th Cir.1979). A dismissal for lack of jurisdiction over the defendant is without prejudice, whereas summary judgment is a ruling upon the merits of a claim which if affirmed is given preclusive effect. *EF Operating Corp. v. American Buildings,*

993 F.2d 1046, 1048 (3d Cir.1993). Therefore, the court will treat Zybach's motion for summary judgment as a motion to dismiss for the purposes of the dispute over the existence of jurisdiction *in rem.* *Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 268 (9th Cir.1995).

■ On a motion to dismiss for lack of jurisdiction over the defendant, the non-moving party's burden is a light one: it must merely present *prima facie* proof that it has met the statutory requirements for the acquisition of jurisdiction. *Stephenson v. Barringer,* 758 F.Supp. 657 (D.Kan.1991). The proof, however, must be more than bare allegations of jurisdiction; plaintiff must establish the existence of the requisite jurisdictional facts. *Lacovara v. Merrill Lynch,* 551 F.Supp. 601 (E.D.Penn.1982). The court must construe plaintiff's allegations of jurisdictional facts in plaintiff's favor. *United States v. Arkwright, Inc.,* 690 F.Supp. 1133 (D.N.H.1988).

## III. *In rem* Jurisdiction Over the Defendant Property

### A. Rules Governing Jurisdiction *in rem*

■ Procedure in civil *in rem* forfeiture actions is governed by the Federal Rules of Civil Procedure to the extent consistent with the Supplemental Rules for Certain Admiralty and Maritime Claims, and otherwise by the Supplemental Rules themselves. *See* 18 U.S.C. § 981(b)(2); 21 U.S.C. § 881(b); *United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489, 493 (9th Cir.1994); *United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.,* 825 F.Supp. 191 (N.D.Ill.1993); *United States v. $5,372.85 United States Coin and Currency,* 283 F.Supp. 904 (S.D.N.Y.1968).

■ In a civil forfeiture proceeding it is the valid seizure of the *res* which confers *in rem* jurisdiction; the seizure is prerequisite to the initiation of the action. *Republic Nat'l Bank of Miami v. United States,* 506 U.S. 80, 83–85, 113 S.Ct. 554, 557, 121 L.Ed.2d 474 (1992); *The Brig Ann,* 13 U.S. (9 Cranch)

---

**2.** The government has made the same assumption in opposing Zybach's summary judgment motion. United States Memorandum of Law in

Opposition to Zybach's Motion for Summary Judgment etc., Doc. # 168, at 1–2.

289, 3 L.Ed. 734 (1815). A court must have actual or constructive control of the *res* when an *in rem* forfeiture action is commenced. *United States v. James Daniel Good Real Property*, —— U.S. ——, ——, 114 S.Ct. 492, 503, 126 L.Ed.2d 490 (1993). The "seizure of the *res*, and publication of the monition or invitation to appear is regarded as equivalent to the particular service of process in law and equity." *Republic Nat'l Bank*, 506 U.S. at 83–86, 113 S.Ct. at 557–58 (quoting *Taylor v. Carryl*, 61 U.S. (20 How.) 583, 589, 15 L.Ed. 1028 (1858)). "The seizure of the property, as thus seen, is made the foundation of the subsequent proceedings. It is essential to give jurisdiction to the court to declare a forfeiture." *Pelham v. Rose*, 76 U.S. (9 Wall.) 103, 19 L.Ed. 602 (1869).[3]

■■■■ In the present case, the asset sought to be forfeit is a debt, namely the balance owing on the sale of the Tiburon realty by Marcus Zybach to Kenneth Tishgart. *See* Writ of Entry and Seizure Warrant (Doc. # 13, Exhibit G). Mere intangibility of an asset, however, does not preclude its seizure. "[A] debt may be treated as a *res* as easily as a ship," *United States v. Freights, etc. of S.S. Mount Shasta*, 274 U.S. 466, 470, 47 S.Ct. 666, 666, 71 L.Ed. 1156 (1927), at least where the debt is represented by a separated or traceable fund, or is admitted and voluntarily paid into court by the debtor. 7A Moore's Federal Practice ¶ C.13, at 687. Here the debt is represented by the promissory note, secured by a deed of trust executed by the debtor, Tishgart, and duly recorded in the county recorder's office. In theory, therefore, the debt is subject to forfeiture in an action *in rem* against the debt itself.[4]

The court's power to entertain such an action, however, still depends on the prior occurrence of a valid seizure of the *res*. Whether styled a proceeding against the intangible debt, or against the deed of trust

held by Zybach as security for that debt, some "thing" must first be seized. *Dobbins's Distillery v. United States*, 96 U.S. (6 Otto) 395, 24 L.Ed. 637 (1877) (requiring seizure of the "property inculpated" before institution of an *in rem* forfeiture action). Jet aircraft, Krugerrands, and Dalmation puppies are all capable of physical asportation by the marshal, thus establishing the requisite judicial control over the property. A debt, by contrast, has no corporeal existence. The Rules, however, address this problem.

Under the Admiralty Rules, where the government seeks the forfeit of intangible personal property of a creditor, it must serve the summons and complaint upon the debtor. Fed.R.Civ.P. Supp.R. B(3)(a); E(4)(c). Where the subject property consists of proceeds of property sold, the Rules require the issuance of a summons "directing any person having control of the funds to show cause why they should not be paid into the court to abide the judgment." Fed.R.Civ.P. Supp. C(3). Execution of process is accomplished by

> leaving with the garnishee or other obligor a copy of the complaint and process *requiring the garnishee or other obligor to answer;* or the marshal may accept for payment into the registry of the court the amount owed to the extent of the amount claimed by the plaintiff with interest and costs, in which case the garnishee or other obligor shall not be required to answer unless alias process shall be served.

Fed.R.Civ.P. Supp. E(4)(c) (emphasis added).

The phrase "requiring the garnishee or other obligor to answer" clearly refers to the summons to show cause described in Fed. R.Civ.P. Supp. C(3). In *United States v. 105,800 Shares of Common Stock of FirstRock Bancorp, Inc.*, 825 F.Supp. 191 (N.D.Ill.1993), the government sought to forfeit shares of stock which allegedly repre-

---

**3.** In that case, as here, there was a promissory note evidencing the debt owed plaintiff. The warrant in *Pelham* ordered seizure of the note, not of the debt, and the Court ruled that valid seizure required physical custody of the document. 76 U.S. at 106–07.

**4.** The court is not presented with a situation where intangible property serves as a means of

obtaining jurisdiction over the person of the creditor to the extent of the value of the property. In such a situation, the plaintiff cannot be located in the district, but the property is situated therein, and is subject to attachment or garnishment to satisfy a judgment against the person of the creditor. *See* 7A Moore's Federal Practice ¶ C.13, at 684.

sented the proceeds of a bank fraud. The court held that service of the forfeiture complaint on the president and CEO of the corporation issuing the shares sufficed to confer *in rem* jurisdiction. Likewise, in *United States v. All Funds On Deposit in Any Accounts Maintained in the Names of Heriberto Castro Meza*, 856 F.Supp. 759 (E.D.N.Y. 1994), *in rem* jurisdiction over money deposited in a foreign bank was acquired via order of the foreign court freezing the bank accounts.

### B. Proper Method of Acquiring Jurisdiction *in rem* Over a Debt

There exist under the Supplemental Rules two distinct methods of acquiring jurisdiction *in rem* over a debt such as that sought to be forfeit in the present case. Fed.R.Civ.P. Supp.R. E(4)(c) permits arrest of intangible property by either (1) leaving with the debtor or obligor a copy of the complaint along with the process described in Rule C(3) (summons ordering debtor to show cause why he or she should not pay the debt into court), or (2) acceptance by the marshal into the registry

of the court of the debt *to the extent of the amount claimed.*

In addition, jurisdiction over a debt such as the Tiburon note may be acquired by physical seizure of the instruments evidencing the debt, namely the trust deed and promissory note. *Pelham v. Rose*, 76 U.S. (9 Wall.) 103, 19 L.Ed. 602 (1869); *Castro Meza, supra.*

### C. Plaintiff's Efforts to Acquire Jurisdiction *in rem*

The Writ of Entry and Seizure Warrant (Doc. # 13, Exhibit G) did direct seizure of the promissory note and deed of trust securing the balance of the purchase price of the Tiburon realty. The government, however, did not file of notice of lis pendens against the real property, nor did it seize the trust deed or note,[5] nor serve the complaint or summons to show cause upon the debtor.[6]

Courts generally require claimants to follow the language of the Supplemental Rules to the letter. *United States v. $38,000 in United States Currency*, 816 F.2d 1538,

---

5. The court is somewhat puzzled by the government's assertion that the Writ of Entry and Seizure Warrant was duly served. *See* United States Memorandum of Law in Opposition to Marcus Zybach's Motion for Summary Judgment etc., Doc. # 168, at 5. The issue is not "service" in the sense of making delivery of a document, but "seizure" of the defendant *res*. *United States v. Approximately 2538.85 Shares of Stock*, 988 F.2d 1281, 1286 (1st Cir.1993). What is more, the government's observation that the U.S. Marshal's Return of Arrest (Doc. # 49) "clearly states that ... the defendant articles were seized and taken into the Marshal's possession" is rather misleading. In that same document, the government expends considerable energy arguing that the location of the promissory note in Switzerland is not fatal to the acquisition of *in rem* jurisdiction. United States Memorandum of Law in Opposition to Marcus Zybach's Motion for Summary Judgment etc. (Doc. # 168, at 12–17). The promissory note is one of the articles whose seizure is authorized by the Writ of Entry and Seizure Warrant (Doc. # 13, Exhibit G). The Marshal's Return therefore improperly recites the seizure of the articles described in Exhibit G: The note is in Switzerland. The trust deed is in the possession of Mr. Zybach.

6. The government did move on February 25, 1993, for an order commanding Kenneth Tishgart to appear and show cause why he should not be required to tender all payments on the promissory note into court to abide the judgment

(Doc. # 99). This court by Order dated February 25, 1993 granted that motion (Doc. # 98), and Mr. Tishgart appeared through counsel at a hearing which took place on April 9, 1993. However, by Minute Order dated April 9, 1993, the Order to Show Cause was quashed without prejudice to renewal on further showing (Doc. # 108). The government argued at the April 9, 1993 hearing that it was entitled to commence foreclosure proceedings on the Tiburon note, and this argument was properly rejected by this court on the ground that the government did not at that time have possession of the note. Transcript of Order to Show Cause, April 9, 1993, at 22–24. Unfortunately, the counsel for the government was apparently under the impression that control over the *res* could only be acquired via foreclosure upon the promissory note and deed of trust. This impression was erroneous: Fed. R.Civ.P. Supp.R. C(3) does not require foreclosure; indeed, the rule authorizes the issuance of supplemental process enforcing the court's order to the garnishee/obligor to show cause why the debt should not be paid into court to abide the judgment in the forfeiture action. The court would have acquired jurisdiction *in rem* over the proceeds of sale from the Tiburon property via the issuance of an order commanding payment by Mr. Tishgart into court, and this order would have been enforceable by the court's contempt power.

1547 (11th Cir.1987). Likewise, because forfeitures are viewed with judicial disfavor, "strict compliance with the letter of the law by those seeking forfeiture [i.e. the United States] must be required." *Id.* (citing *United States v. One 1936 Model Ford V–8 De Luxe Coach,* 307 U.S. 219, 226, 59 S.Ct. 861, 864–65, 83 L.Ed. 1249 (1939); *United States v. One 1976 Ford F–150 Pick–Up,* 769 F.2d 525, 527 (8th Cir.1985); *United States v. One 1957 Rockwell Aero Commander 680 Aircraft,* 671 F.2d 414, 417 (10th Cir.1982); *United States v. One 1977 Cadillac Coupe De Ville,* 644 F.2d 500, 501 (5th Cir. Unit B May 1981)); *see also* E.L. Strobin, Annotation, *Lawfulness of Seizure of Property Used in Violation of Law as Prerequisite to Forfeiture Action or Proceeding,* 8 A.L.R.3d 473, 482–84 (1966 & Supp.1995) (citing state court decisions strictly enforcing procedural requirement of valid seizure in forfeiture actions).

■ In the present case, it does not appear that the government complied with the applicable rules of procedure governing civil *in rem* forfeiture actions. Its letter to Kenneth Tishgart fails to satisfy the requirement that the debtor of a debt sought to be forfeit be ordered to show cause why he should not pay the money into court to abide the judgment. Mr. Tishgart's partial payment of the debt into court likewise fails to satisfy the alternative requirement that the debt be paid into court to the extent of the amount claimed. *See* Fed.R.Civ.P. Supp. E(4)(c). The government seeks to forfeit a $320,000 debt owed Zybach by Tishgart. Mr. Tishgart's payment of some $10,000 into court in no way complies with the rule's requirements.

The fact that Mr. Tishgart made several payments against the debt into the registry of the court does not dispose of the question whether the court ever had the requisite degree of control over the *res.* Indeed, the fact that Mr. Tishgart (a) curtailed his payments after four months and (b) failed to tender the balloon payment representing the majority of the debt persuades this court that the process employed by the government was wholly inadequate to the task.

Moreover, the question of *in rem* jurisdiction is complicated by the fact that this court is not, as were the courts in *FirstRock* or *Castro Meza, supra,* presented with a complaint seeking forfeit of a possessory right to intangible property. At the time of the commencement of this action, the debt remained almost entirely executory. Professor Moore finds it

entirely conceivable that a court will entertain an action *in rem* directed against a debtor of a matured or unmatured debt on the theory that during the pendency of the action the debtor may designate a portion of his funds as belonging to the creditors and, at that time, the funds will become property of the creditor present within the jurisdiction.

7A Moore's Federal Practice ¶ C.13, at 687 n. 14.

The theory does not appear fatally unwieldy or fanciful. Following a show cause hearing under Admiralty Rule C(3), the clerk of the court is authorized to issue supplemental process enforcing the show cause order. Fed.R.Civ.P. Supp.R. C(3). In this way the obligor on an unmatured debt sought to be forfeit may be subject to the court's contempt power, and the debt itself thereby brought under the control of the court. Any default by the debtor on his or her obligation to make payments into court thus subjects the debtor to citation for contempt.

■ Thus, where the proceeding takes the form of an action against the debt, prerequisite to the acquisition of judicial power must be a court order directing payment of that debt into court following the show cause hearing required by Fed.R.Civ.P. Supp.R. C(3). Because no summons to show cause was ever served on Mr. Tishgart, and no order directing payment into court ever issued, the court lacks jurisdiction over the portion of the debt not paid into court.

Furthermore, in order to prevent Mr. Zybach's foreclosing upon the deed of trust and repossessing the underlying real property in the event of a default by Mr. Tishgart, the government should have seized the deed of trust which secured the debt. Conceptually speaking, Mr. Zybach continued to own an interest in the underlying realty after the

sale. This court must guard against the unintentional creation of a mechanism whereby traffickers in illegal narcotics may avoid forfeiture of the fruits of their illegal enterprises by transforming their assets into choses in action or equitable interests in real property. An appropriate seizure of the trust deed would seem to serve that purpose.

The government argues that the promissory note is merely evidence of the debt, and does not constitute the *res* for the purposes of the forfeiture action. The government maintains that the fact that the note remains locked in a vault beneath the pavements of Geneva in no way precludes the seizure of the debt itself. The Supreme Court, however, long ago decided otherwise. In an action to forfeit money owed one Henry Pelham, late of the Army of the Confederacy, the district court for the District of Indiana issued a writ of monition directing the marshal to seize a promissory note evidencing the debt. The note, however, remained in Mr. Pelham's possession in Kentucky. The Court, speaking through Mr. Justice Field, ruled that effective seizure of the debt required the marshal physically to acquire and retain custody of the promissory note. *Pelham v. Rose*, 76 U.S. (9 Wall.) 103, 19 L.Ed. 602 (1869).

■ Nor does the fact that the promissory note resides in Switzerland preclude its seizure. For example, in *United States v. All Funds On Deposit in Any Accounts Maintained in the Names of Heriberto Castro Meza*, 856 F.Supp. 759 (E.D.N.Y.1994), the government sought to forfeit monies on

deposit in London banks. The U.S. Department of Justice sought and received the assistance of the British Crown Prosecution Service, who obtained an order of the High Court of England restraining the defendant bank accounts.

For the foregoing reasons, the civil *in rem* forfeiture claim against the Tiburon note must be dismissed for lack of jurisdiction over the defendant property.[7] Such disposition moots the government's motion to strike Mr. Zybach's motion for summary judgment for failure to file a verified claim (Doc. # 168).[8]

## IV. Lawrence's Motion to Amend Pleadings and for Summary Judgment

### A. Background

Clive Joseph Lawrence has moved (1) for leave to amend or supplement his claim to the Bellflower Ranch property, (2) for leave to file a counterclaim against the United States, and (3) for summary judgment against the government's civil forfeiture claim to the ranch (Doc. # 165).

The subject real property is located in La Plata County, Colorado. In December 1988, Claimant Lawrence's sister, Francillia Emmanuel, purchased the ranch with cash wired to her from a Cayman Islands bank account. In June of 1989 Ms. Emmanuel was interviewed by DEA agents investigating the drug smuggling activities of Emmanuel's longtime lover, Marcus Zybach. On July 8, 1989 the government executed a warrant of seizure against various personal property be-

---

7. The court is presented with something of a riddle. The government argues that Mr. Zybach is not properly a party to this action because he has never filed a verified claim to the property as required by Fed.R.Civ.P. Supp.R. C(6), *see* United States Memorandum of Law in Opposition to Marcus Zybach's Motion for Summary Judgment etc. (Doc. # 168, at 2), and that therefore the court should strike his Motion for Summary Judgment (Doc. # 164). It is true that failure to file a verified claim under Rule C(6) deprives a claimant of standing to contest the forfeiture. *United States v. One 1980 Ford Mustang VIN 0F03D121959*, 648 F.Supp. 1305, 1307 (N.D.Ind. 1986); *United States v. Fourteen (14) Handguns*, 524 F.Supp. 395, 397 (S.D.Tex.1981). But that same rule prevents the filing of the claimant's verified claim until **after** proper execution of process. *United States v. United States Currency*

*in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir.1985). Rather than express frustration with the circularity of this logical problem, the court deems it proper to dismiss the claim against the Tiburon note for lack of jurisdiction *in rem*.

8. The disposition also renders unnecessary the court's consideration of the questions regarding ownership of the note, whether the note was covered by the "foreign assets" clause of the stipulation disposing of the companion criminal case, or whether the present action violates Mr. Zybach's constitutional right to be free of double jeopardy for the same offense. *See* Zybach's Motion for Summary Judgment, Doc. # 164, at 2.

longing to Ms. Emmanuel. Three days later, on July 11, Emmanuel and Lawrence executed a warranty deed purporting to transfer title to the Bellflower Ranch to Lawrence.[9] On July 17, 1989 the government recorded its Notice of Lis Pendens against the ranch. Lawrence recorded his deed on October 26, 1989. After being served with the government's amended complaint for forfeiture in August 1992, Lawrence filed his amended verified claim to the property (Doc. # 86).

## B. Lawrence's Motion to Amend and to File Counterclaim

■ Lawrence seeks to amend his claim in order to allege the sale of the ranch by the government. His theory appears to be that the sale entitles him to the proceeds of that sale and to damages flowing from the sale.

The government correctly observes in its Memorandum of Law in Opposition to Clive Lawrence's Motion to Amend Claim etc. (Doc. # 170) that Lawrence has, in submitting this motion, failed to comply with the terms of Local Rule 15–1.[10] That rule requires the litigant moving for leave to amend a pleading to submit the original of the proposed amended pleading along with the motion to amend. LR 15–1(a). No proposed amended pleadings accompany Lawrence's motion. This failure alone requires the court to deny Lawrence's motion to amend his claim and answer so that he may claim the proceeds of the sale of the ranch and/or damages flowing from that sale. It is therefore unnecessary at this time to address the merits of the proposed amended claim and counterclaim.

## C. Lawrence's Motion for Summary Judgment

■ The statute under which the government seeks forfeiture of the Bellflower

Ranch property provides innocent owners with a defense to forfeiture. 21 U.S.C. § 881(a)(6).[11] Even claimants who acquire the disputed property for no consideration may avail themselves of this "innocent owner" defense. *United States v. 92 Buena Vista Ave.*, 507 U.S. 111, 122–24, 113 S.Ct. 1126, 1134, 122 L.Ed.2d 469 (1993). Once the government has demonstrated probable cause to believe the property is subject to seizure, the burden of proof falls upon the claimant to show by a preponderance of the evidence that he or she (a) is the holder of an ownership interest in the property and (b) was at the time of acquiring the interest ignorant of the illegal conduct giving rise to the forfeiture action. *United States v. One Parcel of Real Property*, 942 F.2d 74 (1st Cir.1991). Innocent ownership status depends upon the claimant's actual, rather than constructive knowledge. *United States v. Real Property at 5000 Palmetto Dr.*, 928 F.2d 373, 375 (11th Cir.1991).

■ Clive Lawrence has moved for summary judgment against the government, arguing that the absence of any genuine issue of material fact with regard to his knowledge of the connection between the Bellflower property and Marcus Zybach's narcotics operations entitles him to judgment as a matter of law.

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975). The moving party is entitled to summary judgment as a matter of law where, viewing the evidence and the inferences arising therefrom in favor

---

**9.** The deed recites as consideration for the transfer of the property, for which Emmanuel had paid $28,000 (*see* United States Motion for Summary Judgment, Doc. # 102, at 6), "ten dollars ($10.00), and other good and valuable consideration...." In her deposition, Emmanuel offered as explanation for the transfer the debt she owed Lawrence in exchange for his having cared for her daughter (Doc. # 166, Exhibit E, at 148).

**10.** Lawrence's error is more accurately described as a failure to comply with former LR

135–2. The former local rules apply to cases filed before June 1, 1995. The distinction is academic, however: The two provisions contain identical language.

**11.** "[N]o property shall be forfeited under this paragraph, to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." 21 U.S.C. § 881(a)(6).

of the nonmovant, there are no genuine issues of material fact in dispute. Fed. R.Civ.P. 56(c); *Semegen v. Weidner,* 780 F.2d 727 (9th Cir.1985). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang,* 711 F.2d 141 (9th Cir.1983).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon the mere allegations or denials of his pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson, supra.* As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* at 248, 106 S.Ct. at 2510. Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex, supra.*

Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.* On a motion for summary judgment, the material before the court "must be viewed in the light most favorable to the [non-moving] party." *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

Unquestionably there is probable cause to believe that the ranch is subject to forfeiture. Francillia Emmanuel, an illiterate woman with no visible means of support other than Marcus Zybach, a convicted drug smuggler, paid cash for the property. The inference that the purchase money derived from the profits from Zybach's illegal business is ineluctable. Indeed, Mr. Lawrence does not contest the existence of probable cause to seize the ranch.

Lawrence argues only that he himself remained innocent—in the Biblical sense—of any wrongdoing connected with the property. The burden of showing "innocent ownership" rests on his shoulders. Because the issue is before the court on Lawrence's own motion for summary judgment, the court must view the evidence of his knowledge that the Bellflower Ranch was bought with drug money in the light most favorable to the government.

■ Claimants to real property sought to be forfeit need not show that they did not exhibit "willful blindness" to the fact that the property was either used to facilitate the carrying out of illegal activities or that it was purchased with profits derived from any such activities. *Compare* 21 U.S.C. § 881(a)(4)(C) (requiring claimants to conveyances to show the absence of "wilful blindness") *with* § 881(a)(6). In order to evade forfeiture under the "innocent owner" defense, the claimant need only show the absence of any guilty knowledge with respect to the use of the property or the source of the funds with which it had been purchased.

Unsurprisingly, there is before the court at this time little direct evidence of what Clive Lawrence did or did not know about the ranch at the time of the transfer of title to him. On the one hand, there is Lawrence's own sworn declaration that he had absolutely no knowledge that the property was tainted until he was served with the instant forfeiture complaint in July 1992.[12] On the other hand, a reasonable finder of fact considering the timing and sequence of events leading from the interrogation of Francillia Emmanuel to the transfer of title from Emmanuel to Lawrence could, in the opinion of this court,

---

**12.** Declaration of Clive Joseph Lawrence, Doc. # 112.

 

infer some knowledge on Lawrence's part of the underlying criminal activities of Zybach and Emmanuel.[13]

Viewing this evidence in the light most favorable to the United States, then, there does seem still to be a genuine issue of fact as to what Lawrence knew of Zybach's and Emmanuel's drug business at the time of the transfer of title.[14] As the Ninth Circuit has ruled, a claimant with knowledge of the tainted origin of the property may not assert the "innocent owner" defense. *United States v. Real Property Located at 10936 Oak Run Circle*, 9 F.3d 74, 76 (9th Cir.1993).

Nor is "innocent ownership" compatible with knowledge of facts sufficient to put a reasonable person on notice that he should inquire further. *Id.* As in *10936 Oak Run Circle*, material to the resolution of the "innocent owner" defense will be questions such as whether Lawrence inquired into his sister's motive for giving the property away, whether her answer might have given Lawrence knowledge of the origin of the property, and so on. The existence of these factual questions precludes summary judgment on the issue of Lawrence's status as an "innocent owner."

Conclusion

For the foregoing reasons. *IT IS THEREFORE ORDERED* that Zybach's Motion for Summary Judgment (Doc. # 164), which the court treats as a motion to dismiss, is *HEREBY GRANTED*. The government's claim to the proceeds of the sale of the Tiburon property is *DISMISSED* for lack of jurisdiction over the defendant property.

*IT IS FURTHER ORDERED* that the government's Motion to Strike Zybach's Motion for Summary Judgment (Doc. # 167) is *HEREBY DENIED AS MOOT.*

*IT IS FURTHER ORDERED* that Lawrence's Motion to Amend or Supplement His Claim and Answer, to File a Counterclaim

and for Summary Judgment (Doc. # 165) is *HEREBY DENIED* in its entirety.

---

**13.** *See* Memorandum of Law in Opposition to Clive Lawrence's Motion to Amend Claim etc. (Doc. # 170, at 6).

**14.** The government's previous concession, in its earlier motion for summary judgment, that "there is nothing to implicate Clive Lawrence in any of his sister's marijuana smuggling activities," United States Motion for Summary Judgment, Doc. # 102, at 17, by no means disposes of the question regarding what Lawrence *knew* of those activities at the time of the transfer.