UNITED STATES of America, Plaintiff,

v.

CERTAIN FUNDS CONTAINED IN ACCOUNT NOS. 600–306211–006, 600–306211–011 AND 600–306211–014 LOCATED AT THE HONG KONG AND SHANG HAI BANKING CORPORATION, et al., Defendants.

No. 91–CV–3642 (DRH).

United States District Court,
E.D. New York.

March 29, 1996.

As Amended April 25, 1996.

Zachary W. Carter, United States Attorney, Eastern District of New York by Arthur P. Hui, Asst. U.S. Atty., Brooklyn, New York, for Plaintiff.

O'Neill, Lysaught & Sun by Brian A. Sun, Ellyn S. Garofalo, Santa Monica, California, Joseph W. Ryan, Uniondale, New York, for Claimants Ko Sai–Man and Chiu Kim–Chun.

### MEMORANDUM AND ORDER

HURLEY, District Judge.

Currently before the Court are objections by Plaintiff United States of America ("the Government"), pursuant to Federal Rule of Civil Procedure 72(b), to the Report and

Recommendation ("Report") of Magistrate Judge, now District Judge, Allyne Ross. In the Report, Judge Ross recommended that this Court grant the motion of Claimants Ko Sai–Man and Chiu Kim–Chun (collectively, "Claimants"), made pursuant to Federal Rule of Civil Procedure 12(c), for judgment on the pleadings. This Court on September 15, 1995 issued an Order adopting that part of Judge Ross's Report that concluded that Claimants had not waived any objections to jurisdiction. The September 15 Order also requested further briefing with respect to the remaining objections, in light of the Second Circuit's decision in *United States v. All Funds on Deposit in any Accounts Maintained in the Names of Heriberto Castro Meza or Esperanza Rodriguez de Castro*, 63 F.3d 148 (2d Cir.1995) ("*Castro Meza*"), aff'g 856 F.Supp. 759 (E.D.N.Y.1994) (Weinstein, J.), *petition for cert. filed*, 64 U.S.L.W. 3511 (Jan. 16, 1996) (No. 95–1134). For the reasons set forth below, the Court denies the Government's remaining objections and adopts Judge Ross's Report.

### *Background*

The factual and procedural background of this action are presented thoroughly in Judge Ross's Report.[1] For the purpose of this Order, however, the Court briefly reviews certain pertinent history. The Government instituted this action *in rem* against the Defendant properties in September, 1991. The Government contends that the Defendant properties, which include "various bank accounts, parcels of real property, stock, and personalty, all located in Hong Kong and valued at approximately $1.5 million, are subject to forfeiture to the United States as proceeds of narcotics activity," pursuant to 18 U.S.C. § 981(a)(1)(A). (Report at 5.) At the time this action was commenced, Claimants were not (and they are not currently) Defendants in a related criminal action in the Eastern District of New York. Further, Claimants were not present in this district, either at the time that the Complaint was filed or thereafter. Upon the filing of the Complaint, warrants *in rem* were issued against the Defendant properties and each

Defendant *in rem* was served by the Royal Hong Kong Police Force. (*Id.* at 7.)

Claimants, through United States counsel, filed this motion for judgment on the pleadings, on the ground that the Court lacked *in rem* jurisdiction. Specifically, Claimants contended that this Court lacked *in rem* jurisdiction because the Defendant properties are located outside of the United States. In response, the Government advanced three arguments. First, the Government contended that 28 U.S.C. § 1355(b)(2), as amended subsequent to the initiation of this action, provided a jurisdictional basis for forfeiture of a *res* located in a foreign country, and that this section should be applied retroactively to confer *in rem* jurisdiction over the Defendants. Second, the Government contended that, even if the new statutory provision were not applied retroactively, the Court had jurisdiction over the action under previously existing law. Finally, the Government contended that Claimants waived any objection to jurisdiction, as they had filed claims to the Defendant properties without objecting to jurisdiction in their initial submissions to the Court.

Judge Ross concluded that Claimants had not waived any objections to jurisdiction. (*See* Report at 15–29.) She also concluded that "when this action began in September 1991, no federal forfeiture statute authorized *in rem* jurisdiction over assets located outside the territorial boundaries of the United States." (*See* Report at 29, 48–60.) Finally, Judge Ross rejected the Government's argument that the 1992 amendments to 28 U.S.C. § 1355 could be applied retroactively to confer *in rem* jurisdiction in this action, (*see* Report 29–48), and recommended that the Court grant Claimants' motion for judgment on the pleadings.

For the reasons discussed below, the Court, like Judge Ross, finds that when this suit was commenced, no federal statute authorized the exercise of *in rem* jurisdiction in this action. Further, the Court agrees with Judge Ross that the 1992 amendments to 28 U.S.C. § 1355 do not apply retroactively. Moreover, the Court finds that the Second

---

1. This opinion assumes familiarity with Judge Ross's Report.

Circuit's decision in *Castro Meza* does not alter these conclusions.

### Discussion

Before turning to the merits of the Government's objections, the Court first considers the relevant standard of review.

### I. Standard of Review

■ In considering a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), the Court must "view the pleadings in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Davidson v. Flynn,* 32 F.3d 27, 29 (2d Cir.1994) (quoting *Madonna v. United States,* 878 F.2d 62, 65 (2d Cir.1989)). The Court should not dismiss the Complaint "unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), *cert. denied,* —— U.S. ——, 115 S.Ct. 73, 130 L.Ed.2d 28 (1994).

■ When a motion has been referred to a Magistrate Judge, Federal Rule of Civil Procedure 72(b) instructs the District Court to make a "*de novo* determination upon the record ... of any portion of the Magistrate Judge's disposition to which specific objection has been made, in accordance with this rule." Fed.R.Civ.P. 72(b). Further, the Court may accept any portion of the disposition of the Magistrate Judge to which no objection has been made, provided that there is no clear error on the face of the record. Fed.R.Civ.P. 72 advisory committee note (citing *Campbell v. United States Dist. Ct.,* 501 F.2d 196 (9th Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)). After conducting its review, the district court may "accept, reject, or modify the recommended decision." *Id.*

With these standards in mind, the Court considers the Government's objections to Judge Ross's Report. For ease of reference, pertinent portions of Judge Ross's Report are set forth below. The Government's objections to the Report follow. First, the Court reviews the Government's objection to Judge Ross's finding that the governing law did not permit the Court to assert *in rem* jurisdiction over the Defendant assets prior to the 1992 amendments to 28 U.S.C. § 1355 ("1992 amendments"). Second, the Court considers the Government's challenge to Judge Ross's conclusion that the 1992 amendments do not operate retroactively to authorize the Court to assert *in rem* jurisdiction in this action. Finally, the Court addresses the submissions by the parties that address the significance of *Castro Meza.*

### II. Judge Ross's Report and Recommendation

#### A. Governing law at the Time the Action was Commenced

The facts of this case presented issues at the time it was commenced with which numerous district courts had struggled—namely, whether, in a civil forfeiture action, a district court could issue process *in rem,* and exert *in rem* jurisdiction over, assets located outside the territorial boundaries of the district court. (*See* Report at 12.) Further, Judge Ross addressed whether, even assuming a district court was authorized to issue extraterritorial process *in rem* and to secure *in rem* jurisdiction over assets located outside a district court's territorial boundaries, that authority extended to assets located outside of the United States. (*Id.*)

Judge Ross, in her exhaustive Report, set forth the applicable statutes and case law governing subject matter jurisdiction, venue and service of process *in rem,* in civil forfeiture actions before the 1992 amendments. (*See* Report 48–59.) Briefly put, when this action was commenced in 1991, the pertinent statutes governing civil forfeiture proceedings provided that venue in civil forfeiture proceedings was proper in the district in which: i) the property sought to be forfeited was found, *see* 28 U.S.C. § 1395(b); ii) a related criminal prosecution against the claimant was brought, *see* 18 U.S.C. § 981(h) ("Section 981(h)") and 21 U.S.C. § 881(j) ("Section 881(j)") (identical language conferring venue in civil forfeiture actions); or iii)

the claimant-defendant owning such property was found.[2] *See id.*

Finally, the civil forfeiture statutes authorized service of process *in rem* in accordance with the Supplemental Rules Relating to Admiralty and Maritime Actions. *See* 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b)(2). Under Supplemental Rule E(3)(a), a district court is authorized to issue process *in rem* to be served only in the district in which it sits. Suppl.R.Ad.M. E(3)(a). The Supplemental Rules also provide for service of process *in rem* pursuant to the Federal Rules of Civil Procedure, to the extent that such service would not be inconsistent with the Supplemental Rules. Suppl.R.Ad.M.A. Federal Rule of Civil Procedure 4 ("Rule 4") provides for extraterritorial and international service of process, but only where independently authorized by a state or federal statute which renders a defendant amenable to service. *See* Fed.R.Civ.P. 4(e), (f).

In the Report, Judge Ross reviewed a line of cases that provided that a district court could not assert *in rem* jurisdiction over assets located outside that court's jurisdiction because the statutes governing civil forfeiture did not expressly authorize the issuance of extraterritorial process *in rem* in order to secure that jurisdiction. (*See* Report at 51–53 (citing, *inter alia, United States v. Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d 974 (3d Cir.1992), *cert. denied,* 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993) and *United States v. Real Property Located at 11205 McPherson Lane,* 754 F.Supp. 1483 (D.Nev.1991), *aff'd* 32 F.3d 573 (9th Cir.1994), *cert. dismissed,* —— U.S. ——, 115 S.Ct. 536, 130 L.Ed.2d 438 (1994)).) Judge Ross also considered a conflicting line of cases that held that the venue provisions contained in 21 U.S.C. § 881 and 18 U.S.C. § 981 provided implied authority for a district court to issue process pursuant to the pertinent provisions of Rule 4 against property located outside that court's district. (*See* Report at 53–56 (discussing, *inter alia, United States v. All Stock of All Classes Issued By R–Jo Trucking Corp.,* 1992 WL 79319 (E.D.N.Y. Apr. 2, 1992) (Nickerson, J.), *United States v. Premises Known as Lots 50 & 51,* 681 F.Supp. 309 (E.D.N.C.1988), and *United States v. One 1974 Cessna Model 310R Aircraft,* 432 F.Supp. 364 (D.S.C. 1977)).)

As to the pre-amendment law governing *in rem* forfeiture actions in which the defendant assets were located outside the district court's territorial boundaries, Judge Ross concluded:

> Contrary to the government's contention, not even the latter line of authorities, which interpret the pre-October 1992 statutory framework governing civil *in rem* forfeiture proceedings as implying not only enhanced venue, but also nationwide jurisdiction and authorization for nationwide service of process, supports the position that the government advances here. First, each of those authorities founded their jurisdictional analysis upon an existing venue statute and reasoned that the language of the statute, conferring venue on the district court in an *in rem* forfeiture proceeding, supported the inference that Congress necessarily intended to confer territorial jurisdiction as well. In *R–Jo, Lots 50 & 51,* and *All Funds,* where the criminal prosecutions occurred in the same court as the forfeiture proceedings, each court was satisfied that it had been granted territorial jurisdiction because the applicable venue statute had expressly granted it venue. Similarly, in *Cessna,* the court held that "the venue statute contained in § 1395 is jurisdictional in nature ... and it alone determines where a forfeiture may properly be brought." *Cessna,* 432 F.Supp. at 368.

Here, by contrast, there is no statute conferring venue on this court in this proceeding. The *res* is not located in the Eastern District of New York, as required by 28 U.S.C. § 1395(b). No claimant is located in the Eastern District of New York nor

---

**2.** Section 981(h) and Section 881(j) expanded venue in *in rem* civil forfeiture actions, which, like a court's authority to issue process *in rem,* traditionally had been limited to the district in which the *res* is located. *See United States v. All Funds on Deposit,* 856 F.Supp. 759 (E.D.N.Y. 1994) (Weinstein, J.), *aff'd,* 63 F.2d 148 (2d Cir. 1995), *petition for cert. filed,* 64 U.S.L.W. 3511 (Jan. 16, 1996) (No. 95–1134).

was any claimant ever prosecuted here as required by 21 U.S.C. § 881(j) and 18 U.S.C. § 981(h).... Absent any venue statute applicable to the instant case, there is no basis to "imply" territorial jurisdiction under the authorities the government cites.

(Report at 56–57.) Thus, the absence of an applicable venue statute when this action was commenced was the basis of Judge Ross's conclusion that the Court did not enjoy any "implied" authority to issue extraterritorial service of process *in rem* and, thus, to secure *in rem* jurisdiction over Claimants' assets. (*Id.* at 57.)

Further, Judge Ross found that "[n]o court has found authorization for service of process in an *in rem* civil forfeiture proceeding outside the territorial borders of the United States." (*Id.* at 58.) Judge Ross's review of the case law revealed only one case, *United States v. United States Funds in the Amount of $3,035,648*, Civ 91–217E, 1991 WL 236843, 1991 U.S.Dist. LEXIS 16248 (W.D.N.Y. Nov. 4, 1991), in which the court granted the claimants' motion to dismiss an *in rem* civil forfeiture suit against assets located in Hong Kong. (Report at 58–59.) Noting that the court in *$3,035,648* found that "the government ha[d] produced no persuasive authority for the proposition that a United States District Court can order property located in a foreign country to be forfeited to the United States[,]" *see* 1991 WL 236843, at *4, 1991 U.S.Dist. LEXIS 16248, at *16, Judge Ross similarly concluded that "there exists no statutory or other precedent supporting *in rem* jurisdiction over Claimants' Hong Kong assets in this lawsuit." (Report at 59.)

**B.** ***1992 Amendments to 28 U.S.C. § 1355***

In October 1992, Congress amended 28 U.S.C. § 1355, broadening venue in civil forfeiture proceedings, authorizing nationwide service of process, and providing for venue in civil forfeiture actions directed at foreign-based property. The 1992 amendments, contained in section 1521 of the Anunzio–Wylie Anti–Money Laundering Act (Anunzio–Wylie

Act), Pub.L. No. 102–550, 106 Stat. 4062, provide in pertinent part:

> (b)(1) A forfeiture action or proceeding may be brought in—
>
>> (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred ...
>>
>> (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.
>
> (2) Whenever property subject to forfeiture under the laws of the United States is located in a foreign country, or has been detained or seized pursuant to legal process or competent authority of a foreign government, an action or proceeding for forfeiture may be brought as provided in paragraph (1), or in the United States District Court for the District of Columbia.
>
> (c) In any case in which a final order disposing of property in a civil forfeiture action or proceeding is appealed, removal of the property by the prevailing party shall not deprive the court of jurisdiction....
>
> (d) Any court with jurisdiction over a forfeiture action pursuant to subsection (b) may issue and cause to be served in any other district such process as may be required to bring before the court the property that is the subject of the forfeiture action.

28 U.S.C. § 1355(b)–(d). In opposition to Claimants' motion, the Government argued that the 1992 amendments should be applied retroactively as they simply "clarified" existing law. (*See* Report at 14.) Additionally, the Government adopted the reasoning of Justice Thomas's concurring opinion in *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 98–100, 113 S.Ct. 554, 565, 121 L.Ed.2d 474 (1992), in which Justice Thomas advanced the view that the newly enacted 28 U.S.C. § 1355(c), *see supra* at 766, not at issue in this case, should apply retroactively.[3]

---

**3.** The Court in *Republic Nat'l Bank of Miami* held that "in an *in rem* forfeiture action, the Court of Appeals is not divested of jurisdiction by the prevailing party's transfer of the *res* from the

District." 506 U.S. at 88–89, 113 S.Ct. at 559–60 (footnote omitted). Noting that the addition of section (c) to 28 U.S.C. § 1355 addressed that very issue, the Court nonetheless expressly de-

In an extensive analysis, Judge Ross first considered the language of the statute itself and concluded that it shed little light on the question of prospective or retrospective application, providing only that the statute "shall apply on the date of enactment." (*See* Report at 30.) Further, "[a]lthough sections in other subtitles of the Anunzio–Wylie Act do provide for special dates of effectiveness or applicability, none of these raise any inference of Congressional intent concerning the prospectivity or retroactivity of the remaining provisions of the Act." (*Id.* at 31 (footnote omitted).)

Judge Ross then reviewed the legislative history of the Anunzio–Wylie Act. (*See* Report at 33.) Noting that references to retroactivity contained in a predecessor version of the same statute had been eliminated, she concluded that "[a]t the very least, this suggests that Congress was aware of this issue and did not intend to address it." (*See* Report at 33.) Judge Ross also found that under Second Circuit law, there exists a presumption in favor of applying statutes prospectively. (Report at 34–37 (relying on, *inter alia, Butts v. City of New York Dep't Hous.*, 990 F.2d 1397 (2d Cir.1993)[4]; *Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990)).) She rejected the Government's arguments that the 1992 amendments merely "clarified" ambiguities in previously existing law concerning *in rem* civil forfeiture proceedings, because prior to the 1992 amendments, no statute conferred the jurisdiction at issue in this action. (Report at 37.)

Further, Judge Ross rejected the Government's position that the 1992 amendments should retroactively confer jurisdiction because statutes enlarging jurisdiction govern pending suits. Judge Ross found that the 1992 amendments present a "first codification" of a district court's authority to exert *in rem* jurisdiction over assets located outside

the district and, indeed, in a foreign country, and that retroactive application is "wholly irreconcilable with the principle that jurisdiction is determined at the time of the commencement of suit." (*Id.* at 42 (relying on *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786 (2d Cir.), *cert. denied,* 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1980)).)

Finally, Judge Ross found that "[w]hile the presumption favoring prospective application of newly enacted civil statutes itself supports a prospective application of § 1355, the 'cardinal principle' requiring the adoption of a construction that avoids constitutional questions squarely dictates a prospective construction of § 1355 in this case because retroactive application of the statute would raise grave constitutional questions concerning the *Ex Post Facto* Clause, U.S. Const. Art. I, § 9, cl. 3." (Report at 42–43.) Specifically, Judge Ross relied on *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 971 (2d Cir.1985):

> Where a statute may be construed to have either retrospective or prospective effect, a court will choose to apply the statute prospectively if constitutional problems can thereby be avoided. Resolution of the constitutional issue need not be certain; there need only be a "substantial doubt," or an indication that the constitutional question is "non-frivolous." "Even the spectre of a constitutional issue" is sufficient to construe the statute to provide for only prospective relief.

(*See* Report at 43.)

Judge Ross found support in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), for her conclusion that retroactive application of the statute raised constitutional questions. In *Austin,* the Supreme Court found that the Excessive

---

clined to "interpret that statute or determine the issue of its retroactive application to the present case." *Id.* 506 U.S. at 89 n. 5, 113 S.Ct. at 560 n. 5.

**4.** In *Butts,* the Second Circuit analyzed whether provisions of the 1991 Civil Rights Act ("the Act") applied retroactively. 990 F.2d at 1397. "[T]o determine the retroactivity question, we

must examine the Act's language, its legislative history, the significance of the two sections where prospectivity is specified in relation to the Act as a whole, and view the Act in light of applicable presumptions." *Id.* at 1404 (citing *United States v. Thompson/Center Arms Co.*, 504 U.S. 505, 511–17, 112 S.Ct. 2102, 2107–09, 119 L.Ed.2d 308 (1992)).

Fines Clause of the Eighth Amendment applies to *in rem* civil forfeiture proceedings, which are punitive in nature. (*See* Report at 45.) Judge Ross concluded that

> [t]he Supreme Court's recent pronouncements in *Austin*, in light of the *Ex Post Facto* Clause's language, raise grave doubts concerning the constitutionality of retroactively applying 28 U.S.C. § 1355(b)—rendering subject to *in rem* forfeiture assets previously free from monetary punishment—to cases pending at the time of its enactment. Accordingly, under the "cardinal principle" of statutory construction applied in *Vuitton*, mandating an interpretation that avoids constitutional issues without deciding them, it is incumbent upon the court to deny § 1355(b) retrospective application.

(Report at 47–48 (footnote omitted).)

Having concluded that the 1992 amendments should not apply retroactively to confer *in rem* jurisdiction in this action, and that the law governing this action at its commencement did not provide for such jurisdiction, *see supra* at 764–66, Judge Ross recommended that the Court grant Claimants' motion for judgment on the pleadings. The Court now turns to the Government's objections to the Report.

### III. *The Government's Objections*

As an initial matter, the Court notes that the Government takes issue with Judge Ross's consideration, or purported lack thereof, of certain submissions outside the pleadings that were offered by the Government in opposition to Claimants' motion for judgment on the pleadings. Specifically, the Government contends that:

> [i]n rendering her Report, Magistrate Judge Ross curiously gave short shrift to the facts pleaded by the Government concerning Ko Sai–Man's heroin trafficking and drug money laundering activities in the complaint, as well in the declarations submitted by the Government, in opposition to claimants' motion. Indeed, one searches in vain the Report for any reference to the documentary and testimonial evidence supporting the Government's assertions that Ko Sai–Man was a major

heroin trafficker and drug money launderer set forth in the First and Second Weinstein Declarations.

(Pl.'s Jan. 14, 1994 Mem. at 24–25.) Additionally, the Government states that "[i]n a Rule 12(c) motion for judgment on the pleadings, the *record* is viewed in a light most favorable to, and all reasonable inferences are drawn in favor of, the nonmoving party[.]" (*Id.* at 24 (emphasis added).) The Court finds that this objection is without merit.

Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") provides:

> [i]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(c).

■ As previously noted, *see supra* at 764, in considering a motion for judgment on the pleadings, the Court must "view the *pleadings* in the light most favorable to, and draw all inferences in favor of, the nonmoving party." *Davidson*, 32 F.3d at 29 (2d Cir.1994) (quoting *Madonna*, 878 F.2d at 65) (emphasis added). If a party presents matters outside of the pleadings, however, the Court has two options. The Court may consider the matters outside the pleadings and convert the motion to one for summary judgment, *see* Rule 12(c), or the Court may exclude those materials and decide the motion on the basis of the pleadings. *See id.*

According to Judge Ross's Report, matters outside the pleadings that were submitted by the Government were not considered. (*See* Report at 14.) Specifically, according to the Report:

> [Claimants] further urge that even were the new statutory provisions to be applied retroactively, these provisions cannot confer jurisdiction on this court because the government has failed to allege sufficient contacts to satisfy the Constitutional due process requirement.... In an effort to

persuade the court that the government could adduce evidence satisfying the Constitutional minimum contacts test, the government proffered additional evidence in the form of declarations and deposition testimony.... Because, as detailed below, the pertinent 1992 amendments to § 1355 should not be applied retroactively in this case, it is not necessary to reach the propriety or sufficiency of the government's recent evidentiary submission.

(*Id.* at 14.)

Judge Ross, thus, acknowledged the Government's submission of matters outside the pleadings and excluded them from her consideration of Claimants' motion. Like Judge Ross, this Court concludes that the 1992 amendments do not apply retroactively, *see infra* at 772–76, and, therefore, the Court does not consider matters outside the pleadings in considering Claimants' motion for judgment on the pleadings.[5]

### A. Objections Regarding Governing law Prior to the 1992 Amendments

■ The Government objects to Judge Ross's conclusion that prior to the 1992 amendments, no federal statute conferred *in rem* jurisdiction in this action. First the Government argues that Judge Ross mistakenly accepted the Claimants' view that prior to 1992, the assets subject to forfeiture were required to be physically located in this district. (*See* Pl.'s Jan. 14, 1994 Mem.Supp. at 38.) The Government relies on numerous cases in which *in rem* jurisdiction was found appropriate even where the *res* was not physically located within the district. (*See id.* at 38–42 (citing *United States v. United States Currency in the Sum of $393,967*, 775 F.Supp. 43, 49 (E.D.N.Y.1991); *United States v. All Stock of All Classes Issued By*

*R–Jo Trucking Corp.*, 1992 WL 79319 (E.D.N.Y. Apr. 2, 1992) (Nickerson, J.); *United States v. All Funds on Deposit*, 767 F.Supp. 36, 39 (E.D.N.Y.1991) (Spatt, J.); *United States v. Premises Known as Lots 50 & 51*, 681 F.Supp. 309 (E.D.N.C., Ral.Div. 1988); *United States v. 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364, 368 (D.S.C. 1977)).) Further, the Government argues that public policy supports the assertion of *in rem* jurisdiction even where the *res* is located outside the district court's jurisdiction. (Report at 44–46 (citing, *inter alia, Lots 50 & 51; R–Jo Trucking; All Funds on Deposit*; Fed. R.Civ.P. 4(i)(1)(C), (E)).) Moreover, the Government argues that Judge Ross erroneously relied on *United States v. $3,035,648.50*, 1991 WL 236843, 1991 U.S.Dist. LEXIS 16248 (W.D.N.Y. Nov. 4, 1991) in concluding that the Court does not have *in rem* jurisdiction over the foreign Defendant assets in this action.

Like Judge Ross, this Court finds that prior to 1992, no federal statute expressly conferred *in rem* jurisdiction over assets located outside of the territorial boundaries of a district in which a court sits. Notwithstanding the broad grant of subject matter jurisdiction and venue conferred upon district courts pursuant to the civil forfeiture laws, the express language of the applicable process provision, which limited a court's authority to issue process *in rem* to within the confines of its respective district, *see* Suppl. R.Ad.M. E(3)(a), proved to be a gap in the scope of civil forfeiture jurisdiction with which various courts grappled.

As the Second Circuit has stated:

Prior to 1992, § 1355 simply provided that district courts had subject matter jurisdiction over forfeiture proceedings com-

---

5. The Government has continued to rely on matters outside the pleadings, in particular, the First and Second Weinstein Declarations, in its submissions to date. (*See, e.g.,* Pl.'s Jan. 14, 1994 Mem. at 2–10; Pl.'s Mar. 18, 1994 Repl.Mem. at 22–23.) On this motion for judgment on the pleadings, the Court does not consider these submissions.

Parenthetically, even if the Court were to consider the matters outside the pleadings that were submitted by the Government, thereby converting the instant motion to a motion for summary judgment, the Government would not prevail.

The "documentary evidence supporting the Government's assertions that Ko Sai–Man was a major heroin trafficker and drug money launderer set forth in the First and Second Weinstein Declarations," (*see* Pl.'s Jan. 14, 1994 Mem. at 25), would not provide the proper predicate for venue under the law applicable to this action, *i.e.*, that the property sought to be forfeited is located in this district, *see* 28 U.S.C. § 1395(b), that Claimants are located in this district, or that Claimants were defendants in a related criminal prosecution in this district. *See* 18 U.S.C. § 981(h); 21 U.S.C. § 881(j).

menced pursuant to the laws of the United States. It did not, however, authorize a district court to issue process against property not located within its district. This limitation hindered the effectiveness of the forfeiture laws, as some courts concluded that district courts lacked *in rem* jurisdiction in actions where the property was located outside the district where the forfeiture action was brought. *See United States v. Contents of Accounts Nos. 3034504504 and 144–07143*, 971 F.2d 974, 983 (3d Cir.1992)....

*Castro Meza*, 63 F.3d at 151. *Compare R–Jo Trucking*, 1992 WL 79319 (court may assert *in rem* jurisdiction in civil forfeiture action even where *res* is not in district), and *Lots 50 & 51*, 681 F.Supp. 309 (same) *with United States v. Accounts Nos. 3034504504 and 144–07143*, 971 F.2d 974 (3d Cir.1992), *cert. denied*, 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148 (1993) (district court did not have *in rem* jurisdiction over property outside of district because service of process could not be effected), and *United States v. Real Property Located at 11205 McPherson Lane*, 754 F.Supp. 1483 (D.Nev.1991) (same).

Put another way, even assuming a district court had subject matter jurisdiction pursuant to 28 U.S.C. § 1355 or 18 U.S.C. § 1345, and proper venue pursuant to either Section 881(j) or Section 981(h), there was no statute that expressly authorized a district court to issue process directed at property outside the boundaries of that court's respective district. In this Circuit, district courts found that the broad grant of subject matter jurisdiction and venue in civil forfeiture cases would be rendered meaningless if district courts were precluded from issuing such process.

In *R–Jo Trucking*, stock and proprietary leases evidencing ownership of property located in the Southern District of New York and in Florida were seized pursuant to a warrant *in rem*. 1992 WL 79319, at *2. The claimant in *R–Jo Trucking* asserted that the court lacked *in rem* jurisdiction over the defendant properties because they were not within the court's district. *Id.* at *3. Noting that "numerous courts" had held that the civil forfeiture provisions give a district court

jurisdiction over a *res* located outside the court's district, *Id.* (citing *United States v. All Funds on Deposit in the Account of Certain Individuals*, No. 91–0881, slip op. at 4 (E.D.N.Y. Oct. 30, 1991) and *United States v. One 1974 Cessna Model 310R Aircraft*, 432 F.Supp. 364, 368 (D.S.C.1977), Judge Nickerson found that Section 981(h) "makes clear that the jurisdictional provisions of 28 U.S.C. section 1355 were to be read to encompass forfeiture of a *res* found outside the district where it is located.... [in that a] forfeiture proceeding may be brought in the judicial district in which the defendant owning such property is found or in the judicial district in which the criminal prosecution is brought." *Id.* Judge Nickerson found that it would be nonsensical for Congress to provide nationwide jurisdiction and venue in civil forfeiture proceedings yet limit the authority to issue process *in rem* to within the district, *id.* at *3–4, and agreed with the court in *Lots 50 & 51*, 681 F.Supp. 309 (E.D.N.C.1988), that nationwide service of process was implied under the Section 881(j) venue provision. *Id.* at *4. Moreover, he concluded that the implication applied equally under Section 981(h), the language of which mirrors Section 881(j). *Id.*

In *Lots 50 & 51*, the government brought a forfeiture action in North Carolina against property located in the Southern District of Florida. 681 F.Supp. at 310. The claimants brought a motion to dismiss for lack of *in rem* jurisdiction on the ground that the extraterritorial service of process *in rem* was defective because the *res* was outside of the district. *Id.* The government argued in that action that subject matter jurisdiction was conferred under 28 U.S.C. §§ 1395, 1355, and that venue was proper under Section 881(j). *Id.* at 310–11. The *Lots 50 & 51* court considered the problem posed by the limited express authority to issue process, namely, "how did Congress intend process to be effected, *i.e.*, did it intend that the reach of process would coextend with this expanded venue or did it simply fail to consider the impact of then current limitations on the reach of process in forfeiture *in rem* actions?" *Id.* at 313. Concluding that the failure of Congress to expressly provide for nationwide service of process in forfeiture

proceedings brought pursuant to 21 U.S.C. § 881 should not frustrate the purpose of enacting Section 881(j), the *Lots 50 & 51* court held that nationwide service of process was authorized. *Id.* at 314.

The conclusions reached by the courts in *R–Jo Trucking* and *Lots 50 & 51*, that nationwide service of process was to be implied to effectuate the enhanced venue conferred to district courts under the venue-for-forfeiture statutes were shared by other courts as well. For example, in *United States v. One 1974 Cessna Model 310R*, 432 F.Supp. 364 (D.S.C.1977) the court stated that:

> [w]hile the Court is acutely aware of the distinctions between jurisdiction and venue, in this particular instance, the venue statute controls territorial jurisdiction in that it represents an effective statutory limitation on the district court's power to hear the matter in hand.

432 F.Supp. at 368.

In contrast, the Third Circuit refused to find implied authority for nationwide service of process in the Section 981(h) and Section 881(j) venue provisions. *See United States v. Accounts Nos. 3034504504 and 144–07143*, 971 F.2d 974 (3d Cir.1992), *cert. denied*, 507 U.S. 985, 113 S.Ct. 1580, 123 L.Ed.2d 148. In *Accounts Nos. 3034504504 and 144–07143*, the government brought a civil forfeiture proceeding directed at property located in the Southern District of New York. The government brought the proceeding in the District of New Jersey, the same district in which a related criminal action had been brought against the claimant. 971 F.2d at 975–76. The Third Circuit examined the government's assertion that a district court's authority to issue extraterritorial process *in rem*, and thus assert *in rem* jurisdiction over the defendant property, was limited only by the forfeiture venue provisions. *Id.* at 980.

Essentially, the government in *Accounts Nos. 3034504504 and 144–07143* argued the same rationale as that adopted by Judge Nickerson in *R–Jo Trucking*, namely, that the expanded venue conferred to district courts under Section 981(h) and Section 881(j) provided implied statutory authorization for extraterritorial service of process in order to effectuate the broad grant of venue found in those provisions. *Id.* at 981. The Third Circuit, however, refused to find such implied authority. "In the absence of clear evidence in the legislative history that Congress intended to allow nationwide service of process when it enacted section 981(h), we do not think that we can imply authorization for nationwide service from section 981(h)'s liberalized view on venue." *Id.* This literal reading of the applicable forfeiture statutes was shared by other courts. *See United States v. Real Property at 11205 McPherson Lane*, 754 F.Supp. 1483, 1486 (D.Nev.1991) ("[T]he legislative history offers no evidence that Congress intended 881(j) to extend a court's power of process[.]").

To be sure, as the Government argues in this case, numerous courts had found, prior to the 1992 amendments, that the venue provisions contained in Section 881(j) and Section 981(h) provided implied authority for a district court to issue process to secure *in rem* jurisdiction over assets located outside the district court's territorial boundaries. *See, e.g., R–Jo Trucking, supra* at 770. However, as Judge Ross correctly concluded, in each case that so found, the action was properly venued pursuant to a then-existing venue statute.[6] *See, e.g., United States v. Currency in the Sum of $393,967*, 775 F.Supp. 43 (E.D.N.Y.1991) (claimant a defendant in related criminal proceeding in same district); *United States v. All Funds on Deposit*, 767 F.Supp. 36 (E.D.N.Y.1991) (Spatt, J.) (same); *United States v. One 1990 Lincoln Town Car*, 817 F.Supp. 1575, 1578 (N.D.Ga.1993) ("This Court agrees with the Government that amended § 1355 shows that Congress intends district courts to have jurisdiction over a forfeiture action *whenever venue is properly had under a forfeiture*

---

**6.** In support of its policy basis for commencing this action in this district, the Government relies on the view, in *dictum*, of the *Lots 50 & 51* court that an unindicted co-conspirator should also be subject to jurisdiction in the district in which illegal activity has taken place. (*See* Pl.'s Jan. 14,

1994 Mem. at 45 (citing *Lots 50 & 51*, 681 F.Supp. at 312).) The Court notes, however, that in *Lots 50 & 51*, unlike the case at bar, a claimant therein was a defendant in a related criminal prosecution in the same district. *See Lots 50 & 51*, 681 F.Supp. at 310–12.

*statute such as 18 U.S.C. § 981.*" (emphasis added); *Lots 50 & 51,* (claimants were criminal defendants in related criminal proceeding); *United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489 (9th Cir.1994) (forfeiture action brought in district where criminal charges pending against claimant were brought).

■ In contrast, in the case at bar, Judge Ross found that none of the statutory bases for venue that existed at the time this action was commenced has been satisfied—namely, that the Defendant property is located in this district, *see* 28 U.S.C. § 1395, or that the claimants are present here or are defendants in a related criminal action pending in this district. *See* Section 981(h) and Section 881(j). Where the Government has asserted that venue is proper in this district, it has· done so in reliance on the "acts or omissions" basis *added* by the 1992 amendments.[7] (*See, e.g.,* Pl.'s Jan. 8, 1993 Mem. at 15–16; *see also* Pl.'s Jan. 14, 1994 Mem. at 37.) However, because this Court holds that the 1992 amendments are not retroactive, the "acts or omissions" that the Government asserts occurred, even if established, cannot afford a proper basis for venue as of the time this action was commenced. Absent venue, *in rem* jurisdiction cannot properly be asserted.

Therefore, based on a review of governing law regarding the jurisdictional requirements in civil forfeiture actions prior to 1992, the Court, like Judge Ross, concludes that *in rem* jurisdiction over the Defendant assets in Hong Kong does not lie in this action. Despite the accuracy of the Government's position that the traditional "no *res,* no jurisdiction" rule had been abrogated even prior to the 1992 amendments, *see, e.g.,* R–Jo Trucking, discussed *supra* at 770, the Government cannot benefit from this expansion to the extent urged. In sum, a statutory basis for venue and thus, a necessary underpinning for this Court's authority to issue process *in rem*

on extraterritorial assets, was absent when this action was commenced.

### B. *Retroactivity*

■ "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). Thus stated the Supreme Court recently while determining whether provisions of the Civil Rights Act of 1991, creating a right to recover compensatory and punitive damages for certain Title VII violations, applied to cases pending on appeal when the Act was enacted.

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress had expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent governing such a result.

511 U.S. at ——, 114 S.Ct. at 1505.

With this presumption against retroactivity in mind, the Court considers the Government's objections to Judge Ross's conclusion that the 1992 amendments do not apply retroactively, *viz.:* 1) that Judge Ross incorrectly interpreted relevant legislative history and Congressional intent of the amendments; 2) the *ex post facto* clause does not apply to this action; and 3) case law supports the retroac-

---

7. Additionally, the Government's arguments concerning proper venue have focussed on whether Ko Sai–Man's activities have a sufficient "nexus" to the Eastern District of New York. (*See, e.g.,* Pl.'s Mar. 18, 1994 Mem. at 21–23.) These assertions address the Claimants' argument that even if the 1992 amendments were applied retroac-

tively, there were insufficient "contacts" between the Claimants' activities and this District. However, as this Court has adopted Judge Ross's conclusion that the 1992 amendments do not apply retroactively, *see infra* at 776, arguments in this regard are not addressed.

tive application of the 1992 amendments. The Court considers each objection in turn.

### 1. *Legislative History*

First, the Government asserts that Judge Ross incorrectly interpreted the legislative history of the 1992 amendments to 28 U.S.C. § 1355. (*See* Pl.'s Jan. 14, 1994 Mem. at 27.) In particular, the Government relies on the following passage from the August 1991 Congressional Record:

> Subsection (b)(1) thus makes clear that these venue-for-forfeiture statutes also give the court in the relevant district jurisdiction over the defendant property even if the property was not seized in that district and is not located there. *See Premises Known as Lots 50 & 51*, 681 F.Supp. at 310–13. . . .

> Subsection (b)(2) addresses a problem that arises whenever property subject to forfeiture under the laws of the United States is located in a foreign country. As mentioned, under current law, it is probably no longer necessary to base *in rem* jurisdiction on the location of the property if there have been sufficient contacts with the district in which the suit is filed. *See United States v. $10,000 in U.S. Currency, supra.* No statute, however, says this, and the issue has to be repeatedly litigated whenever a foreign government is willing to give effect to a forfeiture order issued by a United States court and turn over seized property to the United States if only the United States is able to obtain such an order.

> Subsection (b)(2) resolves this problem by providing for jurisdiction over such property in the United States District Court for the District of Columbia, in the district court for the district in which any of the acts giving rise to the forfeiture occurred, or in any other district in which venue would be appropriate under a venue-for-forfeiture statute. If the acts giving rise to the forfeiture occurred in more than one district, as would commonly occur in a

money laundering case, for example, jurisdiction would lie in any of those districts or in the District of Columbia.[8]

(Pl.'s Jan. 14, 1994 Mem. at 27 (quoting 137 Cong.Rec., daily ed. Aug. 2, 1991, at p. S12238) (footnote inserted).)

Further, the Government relies on the following statement by Senator D'Amato, one of the sponsors of the amendments:

> Although they do not say so explicitly, those statutes apply not only to venue but also to jurisdiction, since it would make no sense for Congress to provide for venue in a district without intending to give a court in that district jurisdiction as well. . . .

> Subsection (b)(1) thus makes clear these venue-for-forfeiture statutes also give the court in the relevant district jurisdiction over the defendant property even if the property was not seized in that district and is not located there.

(Pl.'s Jan. 14, 1994 Mem. at 32 (quoting 137 Cong.Rec., daily ed., Aug. 2, 1991, at S12238).)

According to the Government, the above-quoted remarks by Senator D'Amato, in conjunction with other pertinent sections of the legislative history of the 1992 amendments, *see supra* at 772–73, clearly show that the 1992 amendments were intended to "clarify current law regarding an ambiguous legal issue—*e.g.,* whether it is necessary to base *in rem* jurisdiction on the location of property located overseas in civil forfeiture actions." (Pl.'s Jan. 14, 1994 Mem. at 34.)

It is clear to the Court that the 1992 amendments addressed a problem previously faced by courts in civil forfeiture actions—*viz.,* the lack of explicit statutory authority to issue process in order to secure *in rem* jurisdiction over assets located outside a court's territorial boundaries, and indeed, in a foreign country. As the Court has already discussed, *see supra* at 769–72, courts reached opposite conclusions on that question depending on whether the venue provisions of Section 881(j) and Section 981(h) were under-

---

**8.** The *Lots 50 & 51* court concluded that the venue provisions of Section 881(j), which expanded venue in civil forfeiture proceedings, would be rendered meaningless without corresponding nationwide service of process. *See id.* at 313. In *$10,000 in U.S. Currency,* 860 F.2d 1511 (9th Cir.1988), the Court held that removal of a *res* from the territory of a court does not terminate a court's jurisdiction over the action. *See* 860 F.2d at 1513.

stood to provide "implied" authority to issue such extraterritorial process, and moreover, to require such process to effectuate their purpose.

To be sure, the 1992 amendments clarified that where a court had venue pursuant to a venue-for-forfeiture statute, it was also vested with the authority to issue process *in rem* against defendant assets, wherever located. As Judge Ross correctly found, however, this Court was not vested with venue pursuant to a venue-for-forfeiture statute when the action was brought, and thus, had no authority to assert *in rem* jurisdiction.[9] *See supra* at 765, 772.

Further, to accept the Government's argument that, because the 1992 amendments "clarified" existing law,[10] they should apply retroactively, would, as Judge Ross found, be "wholly irreconcilable with the principle that jurisdiction is determined at the time of commencement of suit." (Report at 42 (citation omitted).) Clearly, the 1992 amendments clarified the relationship between venue and the authority to issue process *in rem;* the 1992 amendments also, significantly, expanded the statutory bases for venue and authorized *in rem* actions against assets located outside of this country. The latter expansions represent a jurisdictional grant that did not exist before the 1992 amendments, and to apply them to this action would retroactively authorize this Court to assert *in rem* jurisdiction over assets that, at the time this action was commenced, this Court was not authorized to reach. *See United States v. 51 Pieces of Real Property, Roswell, N.M.,* 17 F.3d 1306, 1312 (10th Cir.1994) ("[E]ven if the provisions of [the 1992 amendments] were otherwise retroactive, *we doubt they*

*could retroactively validate service of process that was invalid when executed.*") (emphasis added). As is made clear by pre-amendment case law, *see supra* at 770–71, this Court's authority to issue process *in rem,* and thus secure *in rem* jurisdiction, was dependent upon an existing statute conferring venue on this Court. No such statute conferred venue in this case at the time the action was commenced and thus, no statute conferred the authority to assert *in rem* jurisdiction over Claimants' property in Hong Kong.

### 2. *EX POST FACTO Clause*

The Government also asserts that Judge Ross mistakenly "conclude[d] that the *ex post facto* clause bars the retroactive application of 28 U.S.C. § 1355 to this action." (Pl.'s Jan. 14, 1994 Mem. at 35.) The Government argues that at the time this action was commenced, Ko Sai–Man's alleged acts—namely illegally importing and selling heroin in the United States—constituted crimes under United States laws. (*See id.*) Thus, the Government argues, Ko Sai–Man "was or should have been on notice that he was violating United States law, and that the proceeds of his drug trafficking and drug money laundering transactions were subject to forfeiture to the United States." (*Id.*) Moreover, according to the Government, Judge Ross's reliance on *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), was misplaced as that case did not hold or state that the *ex post facto* clause applies in civil forfeiture cases. (Pl.'s Jan. 14, 1994 Mem. at 35 n. 5.)

Relying on cases from other circuits that have held that the *ex post facto* clause does

---

**9.** The fact that the assets in this action are located in a foreign country is, in fact, a further issue. *See infra* at 776–78.

**10.** The Government asserts that insofar as the 1992 amendments "clarified" existing law, they apply to this action, which was pending when the amendments were passed. (*See* Pl.'s Jan. 14, 1994 Mem. at 31 n. 3 (relying on *Leake v. Long Island Jewish Medical Ctr.,* 869 F.2d 130 (2d Cir.1989) (per curiam), *aff'g* 695 F.Supp. 1414 (E.D.N.Y.1988) and *Mrs. W. v. Tirozzi,* 832 F.2d 748, 755 (2d Cir.1987). After a review of these cases, the Court adopts Judge Ross's analysis of the same:

As the Second Circuit recently clarified in *Butts,* however, "*Leake* and *Tirozzi* do not establish a new rule of construction that restorative legislation is presumed to apply retroactively.... Rather, *Leake* and *Tirozzi* simply invite courts to use restorative language and intent as but one means of discerning congressional intent as to retroactivity." *Butts,* 990 F.2d at 1407. Since no such "restorative language" appears in the statute or legislative history at issue here, the authorities are inapposite.

(Report at 36–37.)

not apply to civil forfeiture actions, (*see id.* at 36–37 (citing *United States v. DKG Appaloosas, Inc.,* 829 F.2d 532 (9th Cir.1987), *cert. denied,* 485 U.S. 976, 108 S.Ct. 1270, 99 L.Ed.2d 481 (1988); *United States v. $5,644,-540.00 in U.S. Currency,* 799 F.2d 1357 (9th Cir.1986); *United States v. Eleven Vehicles,* 1993 WL 427376, at *12 (E.D.Pa. Oct. 21, 1993))), the Government argues that "th[is] Court should reverse Judge Ross's determination that the *ex post facto* clause bars the retroactive application of 28 U.S.C. § 1355 to this action." (*Id.* at 37.)

Contrary to the Government's suggestion, however, Judge Ross did not hold that the *ex post facto* clause bars retroactive application of the 1992 amendments. Rather, Judge Ross applied a presumption in favor of applying the 1992 amendments in such a way as to avoid a constitutional issue. (Report at 42.) Clear Second Circuit precedent indicates that where retroactive application of a statute would raise "even a spectre of a constitutional issue," a court will choose to apply a statute prospectively in order to avoid that issue. *See Louis Vuitton S.A.,* 765 F.2d at 971; *see also id.* at 972 ("We do not decide that retroactive application of this statute would violate the *ex post facto* prohibition, only that it would raise the issue.").

Judge Ross found the Supreme Court's decision in *Austin* of great import. She indicated that *Austin,* which clearly found civil forfeiture actions punitive in nature, (*see* Report at 46 (quoting *Austin,* 509 U.S. at 606–07, 113 S.Ct. at 2804)), in conjunction with the language of the *ex post facto* clause, "raise grave doubts concerning the constitutionality of retroactively applying 28 U.S.C. § 1355(b)—rendering subject to *in rem* forfeiture assets previously free from monetary punishment—to cases pending at the time of its enactment." (*See* Report at 48.) The Court agrees.

As Judge Ross noted, (*see* Report at 48 n. 13), the pre-*Austin* cases relied on by the Government are of little assistance in light of *Austin*'s recognition that civil forfeiture statutes have historically been considered, at least in part, as punishment. (*See id.* at 45; *cf. Appaloosas,* 829 F.2d at 540–44 (civil forfeiture provisions are primarily remedial and

therefore *ex post facto* clause does not apply); and *5,644,540 in U.S. Currency,* 799 F.2d at 1364 n. 8 (*ex post facto* clause does not apply because Section 881(h) is civil, not criminal)); *see also United States v. $814,-254.76 in U.S. Currency,* 51 F.3d 207, 211 n. 6 (9th Cir.1995) (the holding of *$5,644,540* "brought into question by the Supreme Court's holding in *Austin*").

The Court, therefore, like Judge Ross, finds that the constitutional issues raised by retroactive application of the 1992 amendments favor applying the 1992 amendments prospectively only.

### 3. *Case law Purportedly Construing the 1992 Amendments Retroactively*

The Government proffers several cases in support of its argument that the 1992 amendments should apply retroactively. *See, e.g., United States v. One Piper Cherokee Aircraft,* 37 F.3d 489 (9th Cir.1994); *see also United States v. Contents of Account No. 2033301,* 831 F.Supp. 337 (S.D.N.Y.1993); *United States v. 18900 S.W. 50th Street,* 915 F.Supp. 1199 (N.D.Fla.1994); *United States v. One 1990 Lincoln Town Car,* 817 F.Supp. 1575 (N.D.Ga.1993). Based on a review of these cases, however, the Court finds that they do not support the Government's position.

In only one of the above cases, *Piper Cherokee,* the court directly addressed whether the 1992 amendments applied to a pending case. In *Piper Cherokee,* the Government commenced in 1989 a civil forfeiture action directed at property outside the court's district. 37 F.3d at 491. The claimant moved to dismiss the action for lack of *in rem* jurisdiction because the subject property had never been brought into the district in which the civil forfeiture action was pending. *Id.* The *Piper Cherokee* court held that "even if [claimant's] contention is correct, recent congressional enactments clearly conferring jurisdiction upon the [district court] were applicable to the action. *Id.* at 492. The court looked to the 1992 amendments, in particular to 28 U.S.C. § 1355(b)(1)(B):

(b)(1) A forfeiture action or proceeding may be brought in—

(B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.

28 U.S.C. § 1355(b)(1)(B).

The *Piper Cherokee* court found that venue had been conferred pursuant to Section 881(j) because a related criminal prosecution against the claimant had been brought in the same district. 37 F.2d at 492. Coupling that conclusion, with the clarification of the permissible reach of process contained in the 1992 amendments, the *Piper Cherokee* court found that *in rem* jurisdiction was properly asserted against the defendant asset which was located beyond the district court's territorial boundaries. By so doing, the *Piper Cherokee* court was never required to address the issue of whether *in rem* jurisdiction had been conferred when the action had been commenced.

In contrast to *Piper Cherokee,* no statute conferred venue in this case at the time that it was commenced. *See supra* at 771–72. The *Piper Cherokee* court's purported "retroactive" application, therefore, did not effect the result that the Government seeks in this case—*viz.*, to retroactively create venue as a basis of asserting *in rem* jurisdiction where such authority was absent when this action commenced. Likewise, in the remaining cases relied on by the Government, an existing venue statute conferred authority to assert *in rem* jurisdiction at the time the action was commenced, *see, e.g.,* One 1990 Lincoln Town Car, 817 F.Supp. at 1577–78 ("[A]mended § 1355 shows that Congress intends district courts to have jurisdiction over a forfeiture action *whenever venue is properly had under a forfeiture statute* such as 18 U.S.C. § 981.") (citation omitted and emphasis added), or were filed after the effective date of the amendments. *See, e.g., United States v. Account No. 2033301,* 831 F.Supp. 337 (action filed after 1992 amendments); *United States v. 18900 S.W. 50th Street,* 915 F.Supp. 1199 (same).

Therefore, the Court rejects the Government's objections to Judge Ross's conclusion that the 1992 amendments do not apply retroactively. The Court thus turns to the Second Circuit's decision in *Castro Meza.*

## C.  *The Significance of CASTRO MEZA*

In August, 1995, the Second Circuit issued its opinion in *United States v. All Funds on Deposit in Any Accounts in the Names of Heriberto Castro Meza,* 63 F.3d 148 (2d Cir. 1995), *aff'g* 856 F.Supp. 759 (E.D.N.Y.1994) (Weinstein, J.), *petition for cert. filed,* 64 U.S.L.W. 3511 (Jan. 16, 1996) (No. 95–1134). This Court, in its Order dated September 15, 1995, called for further briefing from the parties as to the significance of *Castro Meza,* if any, on their respective positions regarding Judge Ross's conclusions that the 1992 amendments were not retroactive, and that the Court lacks *in rem* jurisdiction under statutory and case law as it existed prior to the 1992 amendments. Before addressing the further arguments made by the parties in light of *Castro Meza,* the Court reviews the decision itself.

The facts in *Castro Meza* were as follows. A criminal complaint was filed in the Eastern District of New York in October, 1990, charging Jose Santacruz Londono ("Santacruz") with conspiracy to distribute cocaine and conspiracy to launder narcotics proceeds. 856 F.Supp. at 761. In July, 1993, a civil forfeiture action was commenced in this district against London accounts that had been restrained in 1988 pursuant to a request by the Justice Department in anticipation of the criminal action against Santacruz. *Id.* at 760–61. In September, 1993, at the request of the United States Marshal, copies of the warrant and verified complaint *in rem* in the civil forfeiture action were served on the accounts. *Id.* In November, 1993, claimant Heriberto Castro Meza filed a motion to dismiss the civil forfeiture action on the ground that the district court lacked *in rem* jurisdiction over the defendant accounts. *Id.* Subsequently, in March, 1994, the district court learned that the High Court of England ruled that the restraint thenceforth would be based on the civil forfeiture proceeding and not the prior criminal action against Santacruz. *Id.*

Judge Weinstein began his analysis with a discussion of subject matter jurisdiction and venue. *Id.* Beginning with the traditional rule that venue in forfeiture cases is proper

only in the district where the property is found or into which the property is brought, Judge Weinstein traced the expansion of venue in civil forfeiture proceedings through the enactment of Section 981(h) and Section 881(j), and 28 U.S.C. § 1355. *Id.* Judge Weinstein then turned to the issue of *in rem* jurisdiction. *Id.*

"The issue of *in rem* jurisdiction over the defendant property is separate from subject matter and venue." *Id.* at 762 (citing *Accounts Nos. 3034504504 and 144–07143,* 971 F.2d at 980). As explained by Judge Weinstein, the problem presented by the lack of express authority for a court to issue process *in rem* outside of its respective district was solved with the enactment, in 1992, of 28 U.S.C. § 1355(d): "[t]he purpose of this provision was to clarify that Congress intended to confer *in rem* jurisdiction *to district courts which had venue* pursuant to section 1355(b)." *Id.* (citations omitted and emphasis added).

The requirements of subject matter jurisdiction and venue having been met, Judge Weinstein then turned to the issue presented, *viz.,* whether service of process *in rem* on assets located in a foreign country effected a valid seizure of the property. *Id.* at 763. Judge Weinstein found that such a seizure had been effected. *Id.* "*In rem* jurisdiction over property exists if there is a seizure of the property that gives the court constructive control over the property, and if the seizure satisfies the traditional concerns of jurisdiction, namely, enforceability of the judgment and reasonable probability of notice to the parties interested in the property." *Id.* The claimants in *Castro Meza* appealed on the ground that the British authorities were not bound to remit the proceeds to the United States even if the district court ordered forfeiture, and thus, the district court lacked control over the subject property. 63 F.3d 148 at 151. In response, the government argued that "the only relevant inquiry under Section 1355 was whether any of the conduct giving rise to the forfeiture proceedings occurred in the district in which the action was commenced, even if the property is located in a foreign country." *Id.* at 152.

The Second Circuit soundly rejected this argument. *Id.* According to the court, the 1992 amendments were not intended to alter the traditional requirement of *in rem* jurisdiction that, in addition to subject matter and venue, *see id.* (citing *51 Pieces of Real Property Roswell, N.M.,* 17 F.3d at 1310; *Contents of Accounts Nos. 3034504504,* 971 F.2d at 980–81), the court must secure control over the defendant assets. *Id.* The Second Circuit found, however, that, notwithstanding the lack of a binding obligation on the part of the British government to remit any of the subject funds, Judge Weinstein was correct in his determination that control over the property was secured by the applicable treaty. *Id.* at 153.

In the case at bar, the Government asserts that the issue in *Castro Meza* was whether, in an *in rem* action directed at assets located in a foreign country, a district court had secured the requisite control over the defendant assets. (*See* Pl.'s Oct. 16, 1995 Suppl. Mem. at 7.) According to the Government, Hong Kong authorities have cooperated with the Government in this action and, thus, the requirement of "control" is met. (*See id.* at 8.)

Next, the Government notes that the Second Circuit, in discussing the 1992 amendments, cited to *United States v. One 1978 Piper Cherokee Aircraft,* 37 F.3d 489 (9th Cir.1994). This reference, the Government suggests, constitutes an implicit approval by the Second Circuit of the "Ninth Circuit's conclusions" regarding those amendments, including their retroactivity. (*See* Pl.'s Oct. 16, 1995 Suppl.Mem. at 10.) Accordingly, the Government argues, this Court should apply the 1992 amendments retroactively and deny Claimants' motion for judgment on the pleadings.

Moreover, the Government argues that, even prior to the 1992 amendments, this Court had *in rem* jurisdiction over the Defendant properties in Hong Kong. In support of this argument, the Government asserts that in civil forfeiture actions, the venue provisions of Section 881(j) and Section 981(h) conferred *in rem* jurisdiction over extraterritorial properties, (*see* Pl.'s Oct. 23, 1995 Mem. at 2–8), and that "for the reasons

stated in prior submissions by the United States, venue was proper in this district." (*Id.* at 8.)

*Castro Meza* does not alter this Court's conclusion that *in rem* jurisdiction was lacking in this action due to the absence of a statutory basis for venue at the time the action was commenced and, further, that the 1992 amendments do not retroactively confer such jurisdiction. First, neither the district court nor the Second Circuit in *Castro Meza* was required to address the dispositive issues in this action—namely, the interplay between the subject matter, venue and process statutes governing civil forfeiture actions prior to the 1992 amendments, and, additionally, whether the 1992 amendments can operate retroactively to confer *in rem* jurisdiction where none existed when the action was commenced. Rather, subject matter jurisdiction, venue and the authority to issue process *in rem* were not at issue before the district court and the Second Circuit in *Castro Meza*. The issue was whether the district court had secured adequate control over the foreign-based assets in order to effect a valid seizure.

Second, Judge Weinstein's opinion and that of the Second Circuit support the conclusion that the lack of an applicable federal statute conferring venue is fatal to the Government's argument that *in rem* jurisdiction may be asserted in this action. Both Judge Weinstein and the Second Circuit endorsed the view that, both before and after the 1992 amendments, subject matter jurisdiction, venue and valid process were and remain separate prerequisites to *in rem* jurisdiction. The Government's focus on the requisite control over the foreign-based Defendant properties in this action is, in fact, a further issue and not the sole issue. As the Second Circuit found:

This control is required *in addition to the requirements of subject matter jurisdiction and venue. See, e.g., 51 Pieces of Real Property Roswell, N.M.,* 17 F.3d at 1310 ...; *Contents of Accounts Nos. 3034504504 and 144–07143,* 971 F.2d at 980–81 (subject matter jurisdiction and venue are distinct from ability of court to serve process on property).

*Castro Meza,* 63 F.3d at 152 (emphasis added).

As to the impact of *Castro Meza* on the issue of whether the 1992 amendments are to be applied retroactively, this Court rejects the Government's argument that the Second Circuit's citation to *Piper Cherokee,* 37 F.3d at 492, *see Castro Meza,* 63 F.3d at 151, was an endorsement of retroactive application of the 1992 amendments; the Court further notes that the Second Circuit in *Castro Meza* also cited to *51 Pieces of Real Property,* 17 F.3d at 1310, *Castro Meza,* 63 F.3d at 152, which held that the 1992 amendments were not retroactive. *See 51 Pieces of Real Property,* 17 F.3d at 1312. For the reasons stated above, therefore, *Castro Meza* does not alter the Court's prior conclusions regarding the 1992 amendments and the law governing this action.

In light of the above, the Court rejects the Government's objections to Judge Ross's Report.[11]

### *Conclusion*

For the foregoing reasons, the Court adopts the Report and Recommendation of Judge Ross. Claimants' motion for judgment on the pleadings is, therefore, granted.

SO ORDERED.

---

11. The Court notes that, in a footnote without supporting authority, the Government requests that even if the Court concludes that venue is not proper in this district pursuant to the "acts or omissions" basis for venue added by the 1992 amendments, the Court should transfer this action to the District of Columbia, as provided by new 28 U.S.C. § 1355(b)(2). (*See* Pl.'s Jan. 14, 1994 Mem. at 38 n. 6); *see also supra* at 766.

First, the Court notes that the 1992 amendments, and the jurisdictional expansion contained therein, do not apply to this action. *See supra* at 772–74. Second, the Government has provided no support for the proposition that this Court, having adopted Judge Ross's conclusion that *in rem* jurisdiction is lacking in this action, may transfer it to another tribunal. Thus, the Court denies the Government's request in this regard.